IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 25, 2013 Session

**Tiffany Shockley, Individually and as Personal Representative of the Estate of Terry Street v. Mental Health Cooperative, Inc.**

**Appeal from the Circuit Court for Davidson County**
**No. 12C2509     Hamilton V. Gayden, Jr., Judge**

_____

**No. M2013-00494-COA-R3-CV - Filed November 4, 2013**

_____

The trial court dismissed Appellant's medical malpractice and wrongful death case for failure to comply with the pre-suit notice requirement found in Tennessee Code Annotated Section 29-26-121(a). Appellant's pre-suit notice contained a misnomer, naming the Appellee's fundraising entity, rather than Appellee, as the proper defendant. The trial court determined that under the Tennessee Supreme Court's holding in ***Myers v. AMISUB (SFH), Inc.***, 382 S.W.3d 300, 307 (Tenn. 2012), substantial compliance was not effective to satisfy the statutory requirement for pre-suit notice. Furthermore, because the type of notice required under Section 29-26-121 precedes the filing of the lawsuit, it is not the same type of notice as required for correction of misnomers in pleadings under Tennessee Rule of Civil Procedure 15.03; thus, this rule will not operate to cure the misnomer in the pre-suit notice. Because the Appellant failed to show extraordinary cause for failure to comply with the pre-suit notice, we affirm the trial court's order dismissing this matter. Affirmed and remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J.,W.S., and DAVID R. FARMER, J., joined.

Clinton L. Kelly, Henderson, Tennessee, and Thomas Boyers, V., Gallatin, Tennessee, for the appellants, Tiffany Shockley, Individually and as Personal Representative of the Estate of Terry Street.

Wendy Lynne Longmire and T. William A. Caldwell, Nashville, Tennessee, for the appellee,

Mental Health Cooperative, Inc.

# OPINION

This is a medical malpractice and wrongful death action.[1] Defendant/Appellee Mental Health Cooperative, Inc. ("Cooperative," or "Appellee") operates a Crisis Stabilization Unit ("CSU") in Nashville. On February 28, 2011, Plaintiff/Appellant Tiffany Shockley's brother, Terry Street ("Decedent"), was referred to the CSU after reporting to the Mobile Crisis Response Team that he was hearing voices telling him to "shoot himself after killing everyone else around him." According to the complaint, Decedent advised the intake nurse of two previous suicide attempts. Based upon these previous suicide attempts, as well as Decedent's actions on February 28, Decedent was found to be "acutely suicidal," and was admitted to the CSU facility sometime between 4:12 p.m. and 5:00 p.m. on February 28, 2011.

Around 4:15 a.m. on March 1, 2011, Decedent approached the nursing staff, complaining of a headache; he was given Ibuprofen. Decedent then attempted to go to the group room, but the nursing staff told him that he would need to remain in his own room. At approximately 4:25 a.m., Decedent's roommate went to the nurses' station to inform them that Decedent had hanged himself. The staff found Decedent hanging from a shower rod in his room, with his hospital gown wrapped around his neck. The staff cut Decedent down and started CPR. Thereafter, Decedent was transferred to Vanderbilt Hospital; however, doctors could not resuscitate him. The cause of death at autopsy was suicide by "hanging."

On June 26, 2011, Ms. Shockley, individually, and as the personal representative of Decedent's estate ("Ms. Shockley," or "Appellant"), filed suit against the "Mental Health Cooperative Foundation, Inc." (the "Foundation"), alleging that the Foundation, through its agents, knew or should have known that Decedent was at high and imminent risk of committing suicide. Ms. Shockley further alleged that the Foundation was negligent in its care, custody, and control of Decedent in failing to remove suicide hazards from his room,

---

[1] Tennessee Code Annotated section 29-26-101 now defines most cases occurring in a medical context as "health care liability actions." The statute specifies that such an action "means any civil action, including claims against the state or a political subdivision thereof, alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability, on which the action is based . . . ." *See* Acts 2011, ch. 510, § 8. Effective April 23, 2012, the term "health care liability" replaced "medical malpractice" in the Code. *See* Acts 2012, ch. 798. The provisions of the revised statute do not apply to this action, as the injuries at issue here accrued before October 1, 2011.

i.e., the shower rod.[2]

As noted above, the original complaint was filed against Mental Health Cooperative Foundation, Inc.. It is undisputed that the Foundation never provided care to the Decedent. Rather, the Mental Health Cooperative, Inc. provided care to Decedent. The Foundation is a separate and distinct entity from the Cooperative. The Foundation is the fundraising organization for the Cooperative. It is undisputed that the Foundation was dissolved on June 30, 2012.

Because the complaint alleged that Decedent died as a result of medical malpractice, the claim is governed by the Tennessee Medical Malpractice Act, Tennessee Code Annotated Section 29-26-101, *et. seq*. Tennessee Code Annotated Section 29-26-121(a) requires:

> (a)(1) Any person, or that person's authorized agent, asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability in any court of this state.
>
> (2) The notice shall include:
>
> (A) The full name and date of birth of the patient whose treatment is at issue;
>
> (B) The name and address of the claimant authorizing the notice and the relationship to the patient, if the notice is not sent by the patient;
>
> (C) The name and address of the attorney sending the notice, if applicable;

---

[2] Although the cause of action accrued at latest on March 2, 2011, when the autopsy was performed and the cause of death determined, Tennessee Code Annotated Section 29-26-121(c) extends the statute of limitations by 120 days if the required notice is given:

> When notice is given to a provider as provided in this section, the applicable statutes of limitations and repose shall be extended for a period of one hundred twenty (120) days from the date of expiration of the statute of limitations and statute of repose applicable to that provider.

(D) A list of the name and address of all providers being sent a notice; and

(E) A HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice.

(3) The requirement of service of written notice prior to suit is deemed satisfied if, within the statutes of limitations and statutes of repose applicable to the provider, one of the following occurs, as established by the specified proof of service, which shall be filed with the complaint:

(A) Personal delivery of the notice to the health care provider or an identified individual whose job function includes receptionist for deliveries to the provider or for arrival of the provider's patients at the provider's current practice location. Delivery must be established by an affidavit stating that the notice was personally delivered and the identity of the individual to whom the notice was delivered; or
(B) Mailing of the notice:

\*                              \*                              \*

(ii) To a health care provider that is a corporation or other business entity at both the address for the agent for service of process, and the provider's current business address, if different from that of the agent for service of process; provided, that, if the mailings are returned undelivered from both addresses, then, within five (5) business days after receipt of the second undelivered letter, the notice shall be mailed in the specified manner to the provider's office or business address at the location where the provider last provided a medical service to the patient.

If the plaintiff goes on to file a complaint for health care liability, Tennessee Code Annotated Section 29-26-121(a)(3), *supra*, requires that "specified proof of service . . . shall be filed with the complaint." This requirement is satisfied if:

(4) Compliance with subdivision (a)(3)(B) shall be demonstrated

-4-

by filing a certificate of mailing from the United States postal service stamped with the date of mailing and an affidavit of the party mailing the notice establishing that the specified notice was timely mailed by certified mail, return receipt requested. A copy of the notice sent shall be attached to the affidavit. It is not necessary that the addressee of the notice sign or return the return receipt card that accompanies a letter sent by certified mail for service to be effective.

Tennessee Code Annotated Section 29-26-121(a)(4).

In addition, Tennessee Code Annotated Section 29-26-121(b) requires the plaintiff to attach proof of compliance with Tennessee Code Annotated Section (a)(1) and (2), i.e., the actual pre-suit notice, to his or her complaint:

> (b) If a complaint is filed in any court alleging a claim for health care liability, the pleadings shall state whether each party has complied with subsection (a) and shall provide the documentation specified in subdivision (a)(2). The court may require additional evidence of compliance to determine if the provisions of this section have been met. The court has discretion to excuse compliance with this section only for extraordinary cause shown.

Tenn. Code Ann. §29-26-121(b). Accordingly, in order to maintain a health care liability action, the plaintiff must provide proof that it has complied with the foregoing statutory requirements. This proof is accomplished by attaching, as exhibits to the complaint, an affidavit of mailing supported by actual proof that the notice was mailed. Tenn. Code Ann. 29-26-121(a)(4). In addition to the proof of mailing, under Section 29-26-121(b), the plaintiff must also state, in the complaint, that it has complied with the pre-suit notice requirement and, furthermore, must attach to the complaint copies of the actual notice(s) showing compliance with the enumerated requirements (set out at Section 29-26-121(a)(2)).[3]

In an effort to comply with the foregoing statute, Ms. Shockley attached to her complaint the following documents:

1. An affidavit of notice, stating that "[w]ritten notice of a

---

[3] Under Tennessee Code Annotated Section 29-26-122, the plaintiff is also required to attach an affidavit of good faith to its complaint. It is undisputed that Ms. Shockley complied with this requirement.

potential claim was served upon Defendant, Mental Health Cooperative Foundation, Inc." At paragraph 2, the affidavit of notice also states that "[w]ritten notice of a potential claim for medical malpractice was served upon Peggy Hoffman, defendant's Agent for Service of Process. . . ."

2. Two letters, both dated February 28, 2012. Both letters contain the information required by Tennessee Code Annotated Section 29-26-121(a)(2), *supra*, and are identical except for the named recipient. The first letter is addressed to Mental Health Cooperative Foundation, Inc. and the greeting states: "Dear Mental Health Cooperative Foundation, Inc." The second is addressed to Peggy Hoffman, and the greeting states: "Dear Ms. Hoffman; the second letter begins: You are listed with the State of Tennessee as the agent for service of process for Mental Health Cooperative Foundation, Inc. . . ." The letters were sent to the same address: 275 Cumberland Bend, Nashville, TN.

3. Two return receipts from the United States Postal Service, indicating that the foregoing letters were respectively received by the Mental Health Cooperative Foundation, Inc., and by Peggy Hoffman, Agent for Mental Health Cooperative Foundation. These return receipts indicate that the letters were sent to and received at the same address: 275 Cumberland Bend, Nashville, TN.

4. A certificate of Good Faith as required by Tennessee Code Annotated Section 29-26-122.

5. A cost bond as required by Tennessee Code Annotated Section 20-12-120.

It is undisputed that the Foundation did not render any medical services to the Decedent and that it is not the proper party in interest in this case. Rather, the Cooperative is the correct party-defendant. However, it is also undisputed that Ms. Hoffman was the Registered Agent for both the Foundation and the Cooperative. Furthermore, both the Foundation and the Cooperative share the same business address, 275 Cumberland Bend, Nashville, TN.

On September 4, 2012, the Foundation filed an answer, alleging that the Cooperative, rather than the Foundation, had provided care to Decedent. On September 19, 2012, Ms. Shockley filed a Tennessee Rule of Civil Procedure 15.03 motion to amend her complaint to substitute the Cooperative for the Foundation in order to cure the misnomer. On September 20, 2012, the Foundation moved for summary judgment based upon the fact that

the Foundation had not provided care to the Decedent. On October 1, 2012, the Foundation also filed a response to Ms. Shockley's Rule 15.03 motion, opposing it. Specifically, the response claimed that amendment would not cure the fact that Ms. Shockley had "failed to comply with the notice requirements of the Health Care Liability Act as they would apply to the [Cooperative]." By Order of October 5, 2012, the trial court granted Ms. Shockley leave to file an amended complaint; however, the court reserved issues raised by the defense until after a hearing on the motion for summary judgment.

On October 16, 2012, Ms. Shockley filed a motion in opposition to the Foundation's motion for summary judgment, arguing that the misnomer in the original complaint had been cured by amendment. On November 14, 2012, the Cooperative filed a motion to dismiss the amended complaint, alleging that Ms. Shockley had failed to comply with the pre-suit notice requirements of Tennessee Code Annotated Section 29-26-121 because she sent the notice to the Foundation and not the Cooperative.

The case was heard on January 18, 2013. By Order of January 28, 2013, the trial court dismissed Ms. Shockley's case, stating, in relevant part, that:

> The Defendant, pursuant to ***Myers v. AMISUB (SFH), Inc.***, 382 S.W.3d 300, 307 (Tenn. 2012), filed a properly supported Rule 12 Motion to Dismiss alleging that the Plaintiff had failed to comply with the statutory requirements of T.C.A. 29-26-12[1], specifically that the **Plaintiff had failed to give written notice of a potential claim to each healthcare provider that will be a named defendant**, at least 60 days before the filing of the Complaint based upon medical malpractice in any Court of the State. Specifically, the Plaintiff had sent Notice to the Mental Health Cooperative Foundation, Inc. (the "Foundation"), an erroneous Defendant and not to Mental Health Cooperative, Inc. In support of this Motion to dismiss, the Defendant attached an Affidavit of the agent for service of process, Peggy Hoffman. Ms. Hoffman stated under oath that she is the COO of the Mental Health Cooperative, Inc., and the registered agent for Mental Health Cooperative, Inc., and in that capacity, she sat on the Board of the Mental Health Cooperative Foundation, Inc., a completely separate entity. During the Foundation's existence, Peggy Hoffman was also the agent for service of process. She stated under oath that she received notice of an intent to sue addressed to Peggy Hoffman as agent for Mental Health Cooperative Foundation, Inc., and did not receive any notice

from the Plaintiff addressed to Mental Health Cooperative, Inc. or Mental Health Cooperative of Middle Tennessee.

> The Court found, upon arguments of counsel and the pleadings filed, that the Defendant met its burden to state how the Plaintiff had failed to comply with the statutory requirements by referencing specific omissions in the Complaint and/or by submitting affidavits or other proof and that the burden shifted then to the Plaintiff. The Court found that Plaintiff failed to show either 1) that it complied with the statute, or 2) that it had extraordinary cause for failing to do so. ***Myers v. AMISUB (SFH), Inc.***, 382 S.W.3d 300, 307 (Tenn. 2012). Based upon the Tennessee Supreme Court's opinion and the pleadings and arguments of counsel, the Court determined that the matter should be dismissed.

> The Plaintiff maintained that the attachment of the Affidavit of Peggy Hoffman deemed the Motion filed a Motion for Summary Judgment. At the Plaintiff's request, the Notice required by T.R.C.P. 56 et seq. was given to the Plaintiff[] along with Statements of Undisputed Facts such that the Motion was heard alternatively as a Motion for Summary Judgment. The Court, however, considered the motion in light of the Supreme Court's recent decision in ***Myers***.

(Emphasis in original).

Ms. Shockley appeals, raising one issue for review as stated in her brief:

> Did the Plaintiff comply with Tenn. Code Ann. §29-26-121 where her pre-suit notice to a corporate health care provider contained a misnomer, i.e., Mental Health Cooperative *Foundation*, Inc. instead of Mental Health Cooperative, Inc.?

As noted above, the Cooperative filed a motion to dismiss the lawsuit pursuant to the procedure set forth in ***Myers v. AMISUB (SFH), Inc.***, 382 S.W.3d 300, 307 (Tenn. 2012) ("The proper way to challenge a complaint's compliance with Tennessee Code Annotated Section 29-26-121 . . . is to file a Tennessee Rule of Civil Procedure 12.02 motion to dismiss."). Appellant contends that the motion to dismiss should have been treated as a Tennessee Rule of Civil Procedure 56 motion for summary judgment because the trial court

considered the affidavit of Peggy Hoffman, which was outside the pleadings.[4]  Although the trial court may have reviewed Ms. Hoffman's affidavit, as noted in its order, *supra*, in adjudicating the case, the trial court relied on the *Myers* decision.  It is well settled that a court speaks through its orders. *Palmer v. Palmer*, 562 S.W.2d 833, 837 (Tenn. Ct. App.1977).  Accordingly, we cannot conclude that the Rule 12.02 motion was converted to one for summary judgment in this case.  Regardless of whether we review the case under the standard for Rule 12.02 motions or that for Rule 56 motions, the issue presents a question of law, i.e., did the Appellant comply with the notice requirements of Tennessee Code Annotated Section 29-26-121.  Accordingly, this Court's review is *de novo* with no presumption of correctness.  *Myers*, 382 S.W.3d at 307 (citing *Graham v. Caples*, 325 S.W.3d 578 (Tenn. 2010)), Tenn. R. App. P. 13(d).  To the extent that this issue requires us to interpret, harmonize, and apply various statutory provisions, we apply those principles that our Supreme Court has outlined:

> When dealing with statutory interpretation . . . our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). Our obligation is simply to enforce the written language. *Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 102 (Tenn. 2006).

*Estate of French v. Stratford House*, 333 S.W.3d 546, 554 (Tenn. 2011).

As set out in full context above, Tennessee Code Annotated Section 29-26-121(a)(1) requires the plaintiff in a health care liability action to "give written notice of the potential

---

[4] Tennessee Rule of Civil Procedure rule 12.02 providing, in pertinent part:

> If, on a motion asserting the defense numbered (6) to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by rule 56. Tenn. R. App. P. 12.02.

claim **to each health care provider that will be a named defendant** at least sixty (60) days before the filing of a complaint . . . ." (Emphasis added). Here, it is undisputed that Appellant gave this notice to the wrong party, i.e., the Foundation rather than the Cooperative. In ***Myers***, our Supreme Court specifically held that the statutory requirement that any person asserting a health care liability claim "shall" give defendant 60-day pre-suit notice of the claim was mandatory, not directory, and therefore, strict, rather than substantial compliance with the notice statute, was required in order to maintain a medical malpractice action. ***Myers***, 382 S.W.3d at 309 ("The essence of Tennessee Code Annotated section 29-26-121 is that a defendant be given notice of a medical malpractice claim before suit is filed . . . . The requirements of pre-suit notice of a potential claim under Tennessee Code Annotated section 29-26-121 . . . [is] fundamental to the validity of the respective statutes and dictate that we construe such requirement[] as mandatory.").

Appellant first contends that the statute's enumerated requirements are met in this case. Specifically, Appellant argues that the pre-suit notice contained all of the information outlined at Tennessee Code Annotated Section 29-26-121(a)(2), but (as stated in Appellant's brief) "[n]otably absent from Tenn. Code Ann. §29-26-121(a)(2) is any requirement that the claimant specify the full correct legal name of the health care provider in the corpus of the notice." Accordingly, Appellant contends that, "[i]f the legislature had intended for a claimant to . . . specify the full correct legal name of the health care provider, then it would have said so. It did not." Respectfully, we disagree. At Tennessee Code Annotated Section 29-26-121(a)(1), the Legislature specifies that the pre-suit notice shall be given "to each health care provider that will be a named defendant." This language is clear and unambiguous and requires pre-suit notice be sent to the provider that will be named as a defendant. Here, it is undisputed that the Foundation was neither a health care provider, nor was the Foundation a proper defendant to this lawsuit. It is axiomatic that the proper party be given pre-suit notice under 29-26-121(a)(1). Sending the pre-suit notice to a party that is not going to be named as a defendant is of no effect under subsection 121(a)(1). The question, then, is whether a misnomer in the pre-suit notice may be corrected through the relation back clause of Tennessee Rule of Civil Procedure 15.03.

In its entirety, Rule 15.03 provides:

> Whenever the claim or defense asserted in the amended pleadings arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party or the naming of the party by or against whom a claim is asserted relates back if the foregoing provision is satisfied and if, within the period provided by law

for commencing an action or within 120 days after commencement of the action, the party to be brought in by amendment (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

The courts should construe Tennessee Rule of Civil Procedure 15.03 liberally to promote the consideration of claims on their merits. *Floyd v. Rentrop*, 675 S.W.2d 165, 168 (Tenn. 1984); *McCracken v. Brentwood United Methodist Church*, 958 S.W.2d 792, 794 (Tenn. Ct. App. 1997). However, Rule 15.03 should not be used to breathe life into claims that are plainly time-barred. *Turner v. Aldor Co. of Nashville, Inc.*, 827 S.W.2d 318, 321–22 (Tenn. Ct. App. 1991). As stated by our Supreme Court in *Karash v. Pigot*, 530 S.W.2d 775 (Tenn. 1975):

> Rule 15.03 has never been construed by our courts; however, its language is so clear and unequivocal that it is virtually self-construing . . . . The great liberality of this Rule is convincingly demonstrated by the ensuing provisions permitting a new party, under certain circumstances, to be brought in notwithstanding the fact that the statute has run at the time of the amendment ... The New Rules of Civil Procedure are designed to insure that cases and controversies be determined upon their merits and not upon legal technicalities or procedural niceties.

*Id*. at 777. In addition, the Court stated that "leave (to amend) shall be freely given when justice so requires," again showing the liberality of the Rule. *Id.* (quoting *Branch v. Warren*, 527 S.W.2d 89 (Tenn. 1975)). In other words, the purpose of Tennessee Rule of Civil Procedure 15.03 is to enable parties to correct the "mislabeling of a party they intended to sue," *Grantham v. Jackson-Madison County Gen. Hosp. Dist.*, 954 S.W.2d 36, 38 (Tenn. 1997), not to add a new party who was simply overlooked. *Rainey Bros. Constr. Co. v. Memphis & Shelby County Bd. of Adjustment*, 821 S.W.2d 938, 941 (Tenn. Ct. App. 1991); *Smith v. Southeastern Props., Ltd.*, 776 S.W.2d 106, 109 (Tenn. Ct. App. 1989).

Although Tennessee courts have applied Rule 15.03 in the context of health care liability actions, *see, e.g., Doyle v. Frost*, 49 S.W.3d 853 (Tenn. 2001) (holding that the doctrine of sovereign immunity did not preclude application of Rule 15.03 relation back doctrine to allow patient to add county hospital district as a party defendant), from our research, it appears that the question of whether Rule 15.03 may apply to correct a misnomer

in a pre-suit notice under the health care liability statutes has not been specifically addressed by our courts. Accordingly, we will address that question for the first time here.

As set out in full context above, Rule 15.03 applies, if at all, to correct the "pleadings," i.e., [w]henever the claim or defense asserted in the amended **pleadings** arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original **pleading**, the amendment relates back to the date of the original **pleading**." (Emphases added). Rule 15.03 does not define "pleading." Although, as noted above, Rule 15.03 is meant to be liberally construed, we cannot extend the language beyond its usual, ordinary, or plain meaning. However, is well settled that in interpreting the meaning of a word or phrase in a rule or statute, the court may use dictionary definitions. *State v. Majors*, 318 S.W.3d 850, 859 (Tenn. 2010) (quoting *State v. Williams*, 690 S.W.2d 517, 529 (Tenn.1985)); *see also* 82 C.J.S. Statutes § 415 ("If the statute does not sufficiently define a word used therein, the court may consider all known definitions of the word, including dictionary definitions, in order to determine the plain and ordinary meaning of the word.") (footnotes omitted). The term "pleadings" in the modern context usually refers to the complaint and any answer or response filed by the defendant. As noted in Bryan Garner, A Dictionary of Modern Legal Usage 667 (2nd ed. 1995):

> [A] pleading should be distinguished from court paper, which is a broader term. Motions, briefs, and affidavits are court papers, not pleadings. Examples of pleadings are complaints, petitions, counter-claims, and answers. A late 19th-century writer's explanation shows that this usage is time-honored: "Pleadings are the formal allegations of the parties of their respective claims and defenses." Edwin E. Bryant, *The Law of Pleading Under the Codes of Civil Procedure* 178 (1899).

*Id*.; *accord* Black's Law Dictionary (7th ed.1999) (defining "pleading," in relevant part, as "[a] formal document in which a party to a legal proceeding . . . sets forth or responds to allegations, claims, denials, or defenses."). If Rule 15.03 applies to pleadings only, then the first question is whether the Tennessee Code Annotated Section 29-26-121(a) pre-suit notice satisfies the definition of "pleading" as used in Rule 15.03 so as to allow Rule 15.03 to operate to correct the misnomer in Ms. Shockley's pre-suit notice.

Concerning the nature of the pre-suit notice required under Tennessee Code Annotated Section 29-26-121, this Court recently granted interlocutory appeal to address the question of whether the pre-suit notice requirement is an unconstitutional violation of the separation of powers clause of our Constitution. In holding that Tennessee Code Annotated Section 29-26-121 is not constitutionally invalid, we explained:

"The essence of Tennessee Code Annotated section 29-26-121 is that a defendant be given notice of a medical malpractice claim before suit is filed." ***Myers v. Amisub (SFH) Inc.***, 382 S.W.3d 300, 309 (Tenn.2012). The pre-lawsuit notice requirements in Section 29–26–121 do not conflict with the Court's procedural rules, including Tenn. R. Civ. P. 3., because Section 29-26-121 requires notice of a potential claim "before the filing of the complaint." Tenn. Code Ann. § 29-26-121(a)(1). The pre-suit notice requirements are satisfied before the lawsuit is "commenced" pursuant to Rule 3. Once the suit is "commenced" under Rule 3, it then falls to the courts to hear the facts and decide the issues, including the issue of whether the action should be dismissed for failure to comply with the pre-lawsuit requirements. *See* ***Underwood v. State***, 529 S.W.2d 45, 47 (Tenn. 1975). ("A legislative enactment which does not frustrate or interfere with the adjudicative function of the courts does not constitute an impermissible encroachment upon the judicial branch of government."). Indeed, this Court recently held that Section 29-26-121 does not "redefine the commencement of an action as occurring at any time other than when the complaint is filed." ***Rajvongs***, 2012 WL 2308563, at *5, 2012 Tenn. App. LEXIS 393, at *15. Therefore, Section 29–26–121 and Rule 3 can be construed harmoniously.

***Williams v. SMZ Specialists, P.C.***, No. W2012–00740–COA–R9–CV, 2013 WL 1701843, *8 (Tenn. Ct. App., April 19, 2013). Under the ***Williams*** holding, we cannot conclude, as a matter of law, that pre-suit notice is a "pleading" under the foregoing definitions as it is a requirement that precipitates the filing of the complaint. Therefore, on its face, Rule 15.03 is not applicable. This conclusion is supported by this Court's recent holding in ***Vaughn v. Mountain States Health Alliance***, No. E2012-01042-COA-R3-CV, 2013 WL 817032 (Tenn. Ct. App. March 5, 2013), wherein this Court specifically held that Rule 15.03 does not apply to correct shortcomings in the pre-suit notice:

> Husband contends that his amended complaint served to cure many of the deficiencies of the original complaint. The statutes at issue, however, do not authorize a claimant to cure deficiencies by filing an amended complaint, and as "[t]he essence of Tennessee Code Annotated section 29–26–121 is that a defendant be given notice of a medical malpractice claim before suit is filed," ***Myers***, 382 S.W.3d at 309, the intent of the

legislature is not realized by allowing the practice. Furthermore, we have previously held that timing is mandatory in these statutes. *See Hawkins v. Mason*, No. W2011-02318-COAR3-CV, 2012 WL 3007680, at *4 (Tenn. Ct. App. July 24, 2012).

*Vaughn*, 2013 WL 817032 at *6.

As held in both the *Williams* and *Vaughn* cases, the requirements of Tennessee Code Annotated Section 29-26-121 are requirements that must be met **prior to the commencement of the action**. While Rule 15.03 will operate to cure a misnomer in the complaint, it cannot be extended so far as to correct a requirement that operates prior to the filing of the complaint, i.e., a defect in the pre-suit notice. This is because notice under Tennessee Code Annotated Section 29-26-121 does not involve the actual or constructive notice analysis that is used under Tennessee Rule of Civil Procedure 15.03; rather, it requires an analysis into whether the plaintiff complied with the requirements of pre-suit notice as set forth in the statute. This is a distinction that was addressed by our Supreme Court in *Myers*.

In *Myers*, the plaintiff filed a suit against four healthcare providers in 2006, which was before the Legislature enacted Tennessee Code Annotated Section 29-26-121 on May 15, 2008. *Myers*, 382 S.W.3d 300. Thereafter, on October 21, 2008, the *Myers* plaintiff voluntarily dismissed his lawsuit. On June 11, 2009, the Legislature enacted amendments to Section 29-26-121 that applied to all actions filed on or after July 1, 2009. *Id*. The plaintiff re-filed his lawsuit against all defendants on September 30, 2009. *Id*. When he re-filed the lawsuit, plaintiff failed to comply with either the pre-suit notice requirement of Section 29-26-121, or the certificate of good faith requirement of Section 29-26-122. *Id*. at 306. The defendants filed a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss for failure to comply with the statutory requirements. *Id*. The trial court denied the motion on the ground that the defendants had received actual notice of a potential lawsuit due to the fact that plaintiff had previously filed the lawsuit before voluntarily dismissing it. *Id*.

When the appeal arrived at the Supreme Court, the Court began its analysis by noting that the trial court's ruling contained two issues: (1) that plaintiff complied with the requirements of Tennessee Code Annotated Sections 29-26-121 and 122 based on the filing of his previous lawsuit and the information gained by the defendants in the ensuing litigation; and (2) that there was extraordinary cause to excuse strict compliance with Tennessee Code Annotated Section 29-26-121. *Id*. at 308. In analyzing the question of whether the plaintiff had satisfied the requirements of Sections 29-26-121 and 122, the Court noted that "[t]he requirements of these statutes are precisely stated. The statutes provide clear guidance and detailed instruction for meeting those requirements, and it is not our prerogative to rewrite the statutes." *Id*. at 310 (citing *Gleaves v. Checker Cab Transit Corp*., 15 S.W.3d 799, 803

(Tenn. 2000)). The Court further emphasized that the Legislature's use of the word "shall" was evidence that the Legislature intended the requirements to be mandatory, not directory. *Myers*, 382 S.W.3d at 309. Accordingly, the Court concluded that "[b]ecause the requirements are mandatory, they are not subject to satisfaction by substantial compliance." *Id*. At 310. Rather, the Court held that "notice" under Tennessee Code Annotated Section 29-26-121 can only be satisfied by showing strict compliance with the statute. In other words, the question of whether a plaintiff complied with pre-suit notice does not turn on "actual or constructive" notice; it turns on whether a plaintiff complied with Section 29-26-121. Unlike the notice required under Tennessee Code Annotated Section 29-26-121, Tennessee Rule of Civil Procedure 15.03 may operate to cure a misnomer when the party entitled to notice has, among other requirements, received constructive notice of the claim. So, while we concede that the Cooperative may have received constructive notice in this case based upon the facts that Ms. Hoffman was the agent for service of process for both the Cooperative and the Foundation, the Foundation and the Cooperative had the same business address, and Ms. Hoffman's affidavit indicates that she knew that only the Cooperative was engaged in providing medical services, this "constructive" notice is not enough to satisfy Section 29-26-121. Rather, as held by the *Myers* Court, substantial compliance with the statutory requirements is insufficient to satisfy Section 29-26-121; rather, a party must show **strict** compliance. *Id*. at 304.

Appellant argues, however, that strict compliance was not required in this case because there is no direct requirement that the plaintiff "specify the correct legal name of the health care provider in her pre-suit notice." According to Appellant, because there is no express requirement to name the correct legal entity in the statute, the rule of strict compliance does not apply and the court may rely on the more general rule regarding amendments found in Rule 15.03. Respectfully, we disagree with Appellant's characterization of the issue. As noted above, the pre-suit notice requirement states that the notice must be sent to "each health care provider that will be named as a defendant." Tenn. Code Ann. § 29-26-121(a)(1). Accordingly, by its plain language, the statute requires that the notice be given to the defendant that will ultimately be required to defend the medical malpractice action. *See Glassman, Edwards, Wyatt, Tuttle & Cox, P.C. v. Wade*, 404 S.W.3d 464, 467 (Tenn. 2013) ("If the statutory language is unambiguous, we will interpret the words according to their plain and ordinary meaning.") (citing *State v. Marshall*, 319 S.W.3d 558, 561 (Tenn. 2010)). That was not done here. Rather, the pre-suit notice was sent only to the Foundation, and was never sent to the Cooperative, which was the proper party-defendant. In other words, the Appellant provided notice to an entity that was neither a health care provider, nor the party ultimately tasked with defending the action. According to *Myers*, the pre-suit notice requirements are mandatory, and substantial compliance will not suffice: "We hold that the statutory requirement[] that plaintiff give sixty days pre-suit notice . . . [is a] **mandatory requirement[] and [is] not subject to substantial compliance**." *Id*.

at 304 (emphasis added). By sending the pre-suit notice to a party that was neither a healthcare provider, nor the ultimate defendant in the suit, Appellant failed to strictly comply with Tennessee Code Annotated Section 29-26-121(a)(1).

Under Tennessee Code Annotated Section 29-26-121(b), failure to comply with the pre-suit notice provision results in dismissal of the lawsuit unless the Appellant can demonstrate extraordinary cause. As held in *Myers*, the notice statute allows this Court to exercise "discretion to excuse compliance . . . only for extraordinary cause shown." *Myers*, 382 S.W.3d at 308 (quoting Tenn. Code Ann. §29-26-121(b)). As noted in *Myers*:

> The question of whether [the plaintiff] has demonstrated extraordinary cause that would excuse compliance with the statutes is a mixed question of law and fact, and our review of that determination is *de novo* with a presumption of correctness applying only to the trial court's findings of fact and not to the legal effect of those findings. *Starr v. Hill*, 353 S.W.3d 478, 481–82 (Tenn.2011). We review the trial court's decision to excuse compliance under an abuse of discretion standard. "A court abuses its discretion when it applies an incorrect legal standard or its decision is illogical or unreasonable, is based on a clearly erroneous assessment of the evidence, or utilizes reasoning that results in an injustice to the complaining party." *Wilson v. State*, 367 S.W.3d 229, 235 (Tenn.2012) (citing *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn.2011)). We examine the legal sufficiency of the complaint and do not consider the strength of the plaintiff's evidence; thus, all factual allegations in the complaint are accepted as true and construed in favor of the plaintiff. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 894 (Tenn. 2011).

*Myers*, 382 S.W.3d at 307–308. The *Myers* Court further noted that the fact that the Legislature did not define "extraordinary cause" suggests that the Legislature intended that a plain and ordinary meaning apply to that phrase. Relying upon the dictionary definition, the *Myers* Court defined "extraordinary" as "going beyond the ordinary degree, measure, limit, etc.; very unusual; exceptional; remarkable." *Id*. at 310–11 (quoting *Webster's New World Dictionary of the American Language*, 516 (1966)). The Court further opined that "extraordinary cause" might include "illness of the plaintiff's lawyer, a death in that lawyer's immediate family, [or] illness or death of the plaintiff's expert in the days before the filing became necessary." *Id*. (quoting John A. Day, *Med Mal Makeover 2009 Act Improves on '08; The New Medical Malpractice Notice and Certificate of Good Faith Statutes*, Tenn. B.

J. July 2009, at 17). As set out above, in its order, the trial court specifically found that Appellant had failed to demonstrate extraordinary cause for her failure to provide pre-suit notice to the Cooperative. We have reviewed the entire record and we find nothing to negate the trial court's finding that extraordinary cause does not exist in this case. Furthermore, the Appellant fails to make any argument concerning whether extraordinary cause exists here. In the absence of extraordinary cause, the proper disposition is dismissal for failure to comply with the pre-suit notice requirement of Tennessee Code Annotated Section 29-26-121.[5] While we recognize that this holding produces a harsh result, we are constrained by the plain language of the Tennessee Medical Malpractice Act to affirm the trial court's dismissal of this action.

For the foregoing reasons, we affirm the order of the trial court. The case is remanded for such further proceedings as may be necessary and are consistent with this Opinion. Costs of the appeal are assessed to the Appellant, Tiffany Shockley, and her surety.

_____
J. STEVEN STAFFORD, JUDGE

---

[5] We note that this Court very recently held that dismissal is not the appropriate sanction for failure to comply with the notice requirement of the Tennessee Medical Malpractice Act. *See Givens v. Vanderbilt University*, No. M2013-00266-COA-R3-CV, 2013 WL 5773431, at *5–6 (Tenn. Ct. App. Oct. 24, 2013). In *Givens*, the Appellant specifically raised the issue of whether "the failure to comply with the notice requirements set forth in Tennessee Code Annotated section 29-26-121 mandates dismissal of the action in this case." *Id.* at *2. In the present case, however, the Appellant does not argue that dismissal is an inappropriate sanction for failure to comply with Tennessee Code Annotated Section 29-26-121. Instead, the Appellant only argues that the trial court erred in finding that Appellant had not, in fact, complied with the statute. Consequently, any argument that the trial court erred in imposing the sanction of dismissal for Appellant's failure to comply with the notice requirements is waived on appeal for failure to properly raise it as an issue. *See* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review.").