IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 26, 2015 Session

## JANET WYNN SNYDER v. FIRST TENNESSEE BANK, N.A.

**Appeal from the Chancery Court for Knox County**
**No. 183863-1    John F. Weaver, Chancellor**

_____

**No. E2015-00530-COA-R3-CV-FILED-FEBRUARY 3, 2016**

_____

This case involves the trial court's award of litigation costs, inclusive of attorney's fees, pursuant to Tennessee Code Annotated § 20-12-119(c) (Supp. 2015), upon granting the defendant's Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss the plaintiff's action. The trial court entered a judgment in favor of the defendant in the amount of $10,000, the statutory maximum, against the plaintiff and her surety. The plaintiff appeals the portion of the ruling holding the surety liable for the $10,000 judgment of litigation costs in the event the principal fails to satisfy the judgment. Having determined that the surety's cost bond explicitly referred to "costs" as defined in Tennessee Code Annotated § 20-12-120 (2009), rather than as defined in subsection -119(c), we reverse the trial court's judgment as to the surety. We affirm the trial court's judgment against the principal and remand for enforcement of that judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part, Reversed in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Mark E. Brown, Knoxville, Tennessee, for the appellant, Janet Wynn Snyder.

J. Michael Winchester, Knoxville, Tennessee, for the appellee, First Tennessee Bank, N.A.

**OPINION**

**I. Factual and Procedural Background**

This is the second time the instant action has come before this Court on appeal. The plaintiff, Janet Wynn Snyder, originally commenced the action on October 1, 2012, by filing a complaint alleging breach of contract against the defendant, First Tennessee Bank, N.A. ("the Bank"). Upon a motion to dismiss filed by the Bank pursuant to Tennessee Rule of Civil Procedure 12.02(6), the trial court conducted a hearing and subsequently granted the motion in an order entered May 31, 2013. Upon Ms. Snyder's appeal, this Court affirmed the dismissal of her complaint. *See Snyder v. First Tenn. Bank, N.A.*, 450 S.W.3d 515 (Tenn. Ct. App. 2014), *perm. app. denied* (Tenn. Oct. 15, 2014) ("*Snyder I*"). Determining that Ms. Snyder's breach of contract claim alleged wrongful acceleration of a note in default, this Court held that "wrongful acceleration is not an existing cause of action in this state, and we decline the invitation to create such a cause of action." *Id.* at 516. This Court therefore affirmed the trial court's dismissal of the complaint for failure to state a claim upon which relief could be granted. *Id.*

In *Snyder I*, this Court described the factual and procedural background underlying the original action as follows:

> Snyder's complaint alleges the key background facts of this case. In 1988, Snyder's father executed a last will and testament which created a trust ("the Trust") out of the remainder of his estate. Some years after executing this will, Snyder's father died. Snyder and certain members of her family were beneficiaries of the Trust. Under the terms of the Trust, Snyder received 30% of the income from the Trust annually. The Bank eventually was appointed trustee. The value of the Trust on the date of appointment was $1,464,315.57 with a market value of $1,506,841.21.

> Snyder and her husband signed a note and deed of trust for their home as well as a note and deed of trust on a home equity line of credit. These loans were from the Bank. In 2005, Snyder, in the midst of financial difficulties, asked for help from the Trust in making her monthly mortgage payments. Snyder's requests were denied. In the fall of 2005, Snyder asked that the Trust be terminated and that the proceeds be paid to the beneficiaries. The Bank announced that it would resign as trustee. The Bank, however, refused to join the beneficiaries in dissolving the Trust.

> In December 2005, Snyder asked the Bank for a "hardship advance" pending the Trust's dissolution so that Snyder could make mortgage

2

payments due the Bank. The Bank did not grant Snyder's request. Snyder alleged that she then had no choice but to hire an attorney to seek dissolution of the Trust. Snyder entered into a contingent fee arrangement with an attorney to seek court approval of the dissolution of the Trust. In March 2006, the Bank filed a petition in the Trial Court seeking the appointment of a successor trustee. Snyder filed a counter-claim.

The Bank threatened foreclosure and served notice on Snyder that it was accelerating its loans on Snyder's home. At this point, Snyder's share of the Trust would have been sufficient to cover the loan shortfall. Snyder obtained several delays of the foreclosure. In November 2006, the Trust was dissolved by agreed order. The Bank wrote itself a check from the corpus of the Trust to cover . . . Snyder's loan deficiency. The Bank failed to make distributions to the beneficiaries. Snyder filed a motion to compel the Bank to make the distributions, which the Bank subsequently did.

In October 2012, Snyder sued the Bank seeking compensatory and punitive damages. Snyder alleged breach of contract in that the Bank acted in bad faith and forced Snyder to incur needless attorney's fees in dissolving the Trust. The Bank filed a motion to dismiss for failure to state a claim upon which relief can be granted and failure to join a party. Snyder filed a response to the motion, clarifying that her complaint alleged "breach of the Deed of Trust contract on the real property."

In March 2013, the Trial Court heard arguments on the Bank's motion to dismiss. In May 2013, the Trial Court granted the Bank's motion to dismiss for failure to state a claim upon which relief can be granted. In its memorandum opinion incorporated into the final judgment of dismissal, the Trial Court held, *inter alia:* any breach of fiduciary duty claim was time-barred; no foreclosure occurred and any wrongful foreclosure claim failed; and, there was no breach of contract claim as any such claim was time-barred, and, in any event, the Bank did not breach its contracts. The Trial Court stayed the issue of costs and attorney's fees sought by the Bank under Tenn. Code Ann. § 20-12-119(c) pending resolution of any appeal. Thereafter, Snyder timely appealed to this Court.

*Id.* at 516-17 (footnotes omitted). This Court remanded the case to the trial court "for collection of the costs below and further proceedings pursuant to Tenn. Code Ann. § 20-12-119(c)." *Id.* at 519.

3

Upon remand, the Bank filed a motion to award costs and attorney's fees, pursuant to Tennessee Code Annotated §§ 20-12-119(c) and 20-12-135, on October 29, 2014. The Bank attached to its motion a memorandum and affidavit setting forth attorney's fees in the amount of $57,238.75 and a court reporter's fee in the amount of $403.25, for a total amount of $57,642.00. The Bank requested that, pursuant to subsection -119(c), the trial court impose a judgment for the maximum statutory amount of $10,000 in litigation costs, inclusive of attorney's fees, against Ms. Snyder. The Bank also specifically requested that the court find Ms. Snyder's surety liable for the statutory maximum of $10,000 in the event that Ms. Snyder failed to satisfy the judgment as principal.

Concomitant with Ms. Snyder's original complaint, her counsel, Menefee & Brown, Inc. (hereinafter, "the Surety"), had filed a cost bond pursuant to Tennessee Code Annotated § 20-12-120, recognizing itself "as surety for all costs and taxes in this cause." Ms. Snyder filed a response to the Bank's motion, arguing, as pertinent to this appeal, that the plain language of the statute does not implicate liability of the Surety for litigation costs beyond court costs.[1]

The trial court conducted a hearing on January 21, 2015, during which the Bank's counsel presented an affidavit supporting the reasonableness of the costs and attorney's fees presented. On February 27, 2015, the court issued a Memorandum Opinion, finding, *inter alia*, that the court reporter's fee and attorney's fees presented were reasonable. The court awarded the Bank a judgment for litigation costs, inclusive of attorney's fees, in the maximum statutory amount of $10,000. *See* Tenn. Code Ann. § 20-12-119(c). Regarding the Bank's argument that this award should be taxed against the Surety as well as against Ms. Snyder, the court requested that the parties submit post-trial briefs, which each did respectively. Upon consideration, the court entered a judgment on March 27, 2015, taxing the $10,000 award of litigation costs against both Ms. Snyder and the Surety. Ms. Snyder timely appealed.[2]

---

[1] Ms. Snyder also argued in her response that as Tennessee Code Annotated § 20-12-119(c) is written, it violates the equal protection and separation of powers clauses of the United States and Tennessee Constitutions. Her counsel announced during the final hearing on this matter, however, that Ms. Snyder had elected to waive any constitutional argument.

[2] We address the issue of whether the Surety is a party to this appeal in a subsequent section of this opinion.

## Issues Presented

Ms. Snyder presents one issue on appeal, which we have restated as follows:

1. Whether the trial court erred by ruling that Tennessee Code Annotated § 20-12-119(c) applies to a party's surety, as well as to the party, when the party's case is dismissed upon a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss for failure to state a claim upon which relief can be granted.

The Bank presents two additional issues, which we have similarly restated as follows:

2. Whether either Ms. Snyder or her surety has standing to pursue a claim or remedy in this appeal.

3. Whether this appeal is frivolous pursuant to Tennessee Code Annotated § 27-1-122.

## III. Standard of Review

The issues raised are primarily questions of law, specifically involving interpretation of Tennessee Code Annotated § 20-12-119(c). We review questions of law, including those of statutory construction, *de novo* with no presumption of correctness. *See Cunningham v. Williamson Cnty. Hosp. Dist.*, 405 S.W.3d 41, 43 (Tenn. 2013) (citing *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 366 (Tenn. 2012)). Our Supreme Court has summarized the principles involved in statutory construction as follows:

> When dealing with statutory interpretation, well-defined precepts apply. Our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). Our obligation is simply to enforce the written language. *Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 102 (Tenn. 2006). It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history

of the legislation, or other sources. *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998). Further, the language of a statute cannot be considered in a vacuum, but "should be construed, if practicable, so that its component parts are consistent and reasonable." *Marsh v. Henderson*, 221 Tenn. 42, 424 S.W.2d 193, 196 (1968). Any interpretation of the statute that "would render one section of the act repugnant to another" should be avoided. *Tenn. Elec. Power Co. v. City of Chattanooga*, 172 Tenn. 505, 114 S.W.2d 441, 444 (1937). We also must presume that the General Assembly was aware of any prior enactments at the time the legislation passed. *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995).

*In re Estate of Tanner*, 295 S.W.3d 610, 613-14 (Tenn. 2009).

To the extent that we need also review the factual findings of the trial court, we presume those findings to be correct and will not overturn them unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Morrison v. Allen*, 338 S.W.3d 417, 425-26 (Tenn. 2011). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006).

## IV. Standing

We first address the threshold issue of standing to raise the issue of the Surety's liability on appeal. The Bank contends that because the Surety was not named as a party before the trial court or on the notice of appeal, it cannot raise an issue on its own behalf. The Bank further contends that Ms. Snyder cannot raise the issue of a judgment not entered against her. Ms. Snyder asserts that the trial court joined the Surety to the action by including the Surety in the judgment. Upon careful consideration, we conclude that the Surety has standing to appeal the judgment entered against it.

This Court has explained the elements constituting standing as follows:

In order to establish standing, a party must demonstrate three essential elements. First, the party must demonstrate that it has suffered an injury which is "distinct and palpable," *Metropolitan Air Research Testing Auth., Inc.,* 842 S.W.2d [611,] 615 [(Tenn. Ct. App. 1992)], and not conjectural or hypothetical. Second, the party must establish a causal connection between that injury and the conduct of which he complains. Third, it must be likely that a favorable decision will redress that injury.

6

*Petty v. Daimler/Chrysler Corp.*, 91 S.W.3d 765, 767 (Tenn. Ct. App. 2002) (additional internal citations omitted).

The Bank, in its motion for costs and attorney's fees, expressly requested that the trial court hold the Surety liable for the maximum statutory amount in addition to holding Ms. Snyder liable. Upon the trial court's request at the close of the hearing on the motion, the Bank and Ms. Snyder each respectively submitted a post-trial brief on the issue, which the trial court carefully considered. As Ms. Snyder notes, the record reveals that the Bank at no time introduced a standing argument to the trial court regarding the Surety. We therefore determine that the Bank has not properly raised the issue on appeal of standing before the trial court. *See Dorrier v. Dark*, 537 S.W.2d 888, 890 (Tenn. 1976) ("This is a court of appeals and errors, and we are limited in authority to the adjudication of issues that are presented and decided in the trial courts . . . .").

Moreover, we determine that the requirements for standing as to the Surety on appeal are met. In having a $10,000 judgment rendered against it as well as the principal, the Surety arguably suffered a distinct and palpable injury as a result of the trial court's application of the statute, an injury that would be redressed if this Court found in the Surety's favor. *See Petty*, 91 S.W.3d at 767. To rule that the Surety has no standing in this action would deprive the Surety of due process to seek relief from the judgment.[3] This Court has the discretion to add a party pursuant to Tennessee Rule of Appellate Procedure 19(e), which provides that "[p]arties may be added or dropped by order of the appellate court on its own motion or on motion of a party and on such terms as are just." We therefore, on our own motion and in the interest of justice, join the Surety as a party to this appeal.

V. Applicability of Tennessee Code Annotated § 20-12-119(c) to Surety

The Surety contends that the trial court erred by applying Tennessee Code Annotated § 20-12-119(c) to assess attorney's fees against the Surety as well as against Ms. Snyder as the principal plaintiff. Subsection 119(c) provides for a defendant to recover up to $10,000 in "reasonable and necessary litigation costs," including court reporter's and attorney's fees, from a plaintiff when the plaintiff's action is dismissed for failure to state a claim upon which relief can be granted. The Bank contends that the trial court properly interpreted the statute to find the Surety liable for $10,000 in litigation costs, inclusive of the court reporter's fee and attorney's fees, in the event that Ms. Snyder failed to pay the judgment. Upon our careful review, we conclude that under the terms of the cost bond filed in the instant action, the Surety limited its liability to "costs" as defined in Tennessee Code Annotated § 20-12-120 and is therefore not liable for the

---

[3] We are not persuaded by the Bank's argument that the Surety's only avenue of redress from the judgment should be to sue its own client if she should fail to pay the judgment.

$10,000 in fees awarded to the Bank for litigation costs if Ms. Snyder fails to satisfy the judgment.

The General Assembly amended Tennessee Code Annotated § 20-12-119 to add subsection (c) effective July 1, 2012. *See* 2012 Pub. Acts, Ch. 1046 § 1 (H.B. 3124). Section -119 provides in full:

(a)     In all civil cases, whether tried by a jury or before the court without a jury, the presiding judge shall have a right to adjudge the cost.

(b)     In doing so, the presiding judge shall be authorized, in the presiding judge's discretion, to apportion the cost between the litigants, as in the presiding judge's opinion the equities of the case demand.

(c)(1)  Notwithstanding subsection (a) or (b), in a civil proceeding, where a trial court grants a motion to dismiss pursuant to Rule 12 of the Tennessee Rules of Civil Procedure for failure to state a claim upon which relief may be granted, the court shall award the party or parties against whom the dismissed claims were pending at the time the successful motion to dismiss was granted the costs and reasonable and necessary attorney's fees incurred in the proceedings as a consequence of the dismissed claims by that party or parties. The awarded costs and fees shall be paid by the party or parties whose claim or claims were dismissed as a result of the granted motion to dismiss.

(2)     Costs shall include all reasonable and necessary litigation costs actually incurred due to the proceedings that resulted from the filing of the dismissed claims, including, but not limited to:
(A)     Court costs;
(B)     Attorneys' fees;
(C)     Court reporter fees;
(D)     Interpreter fees; and
(E)     Guardian ad litem fees.

(3)     An award of costs pursuant to this subsection (c) shall be made only after all appeals of the issue of the granting of the motion to dismiss have been exhausted and if the final outcome is the granting of the motion to dismiss. The award of costs and attorneys' fees pursuant to this section shall be stayed until a final decision which is not subject to appeal is rendered.

8

(4) Notwithstanding any other provision of this section, the court shall not require a party to pay costs under this section in excess of a combined total of ten thousand dollars ($10,000) in any single lawsuit. Where multiple parties are entitled to recover their costs from a single party under this section and those parties' combined actual costs under this section exceed ten thousand dollars ($10,000), then the court shall apportion the awarded costs to the moving parties in proportion to the amount of each moving party's incurred costs unless agreed otherwise by the moving parties. Nothing in this section shall be construed to limit the award of costs as provided for in other sections of the code or at common law.

(5) This subsection (c) shall not apply to:

(A) Actions by or against the state, other governmental entities, or public officials acting in their official capacity or under color of law;

(B) Any claim that is dismissed by the granting of a motion to dismiss that was filed more than sixty (60) days after the moving party received service of the latest complaint, counter-complaint or cross-complaint in which that dismissed claim was made;

(C) Any claim that the party against whom the motion to dismiss was filed withdrew, or in good faith amended to state a claim upon which relief may be granted; however, this subdivision (c)(5)(C) shall not apply unless a pleading providing notice of the withdrawal or amendment was filed with the court and delivered to the opposing party or parties at least three (3) days before the date set for the hearing of the motion to dismiss or by the deadline for the filing of a response to the motion to dismiss, whichever is earlier. Nothing in this section shall be construed to prevent a party from striking its own motion to dismiss.

(D) Actions by pro se litigants, except where the court also finds that the pro se party acted unreasonably in bringing, or refusing to voluntarily withdraw, the dismissed claim;

9

(E)     Any claim which is a good faith, non-frivolous claim filed for the express purpose of extending, modifying, or reversing existing precedent, law or regulation, or for the express purpose of establishing the meaning, lawfulness or constitutionality of a law, regulation or United States or Tennessee constitutional right where the meaning, lawfulness or constitutionality is a matter of first impression that has not been established by precedent in a published opinion by the Tennessee supreme court, court of appeals, court of criminal appeals, a United States district court in Tennessee, or by the United States supreme court. This subdivision (c)(5)(E) shall not apply unless at the time the successful motion to dismiss was filed the party that made the dismissed claim had specially pleaded in its latest complaint, counter-complaint or cross-complaint that the dismissed claim was made for one (1) of the express purposes listed above and cited the contrary precedent or interpretation the party seeks to distinguish or overcome, or whether the issue to be decided is a matter of first impression as described in this subdivision (c)(5)(E); or

(F)     Any claim for which relief could be granted under a law, a court precedent published by a court described in subdivision (c)(5)(E), or a regulation, that was in effect and applicable to the claim at the time the motion to dismiss was filed; where that law, precedent or regulation was cited in the pleading in which the dismissed claim was made or in the response to the motion to dismiss; and where the motion to dismiss the claim was granted due to the subsequent repeal, amendment, overruling or distinguishing of that law, regulation or published court precedent.

(6)     This section shall not be construed to limit the ability of any court to dismiss a claim or assess costs against a party whose claim has been dismissed, where permitted or required by other law, court rule or at common law.

Upon affirming the trial court's grant of the Bank's motion to dismiss Ms. Snyder's action for failure to state a claim upon which relief could be granted, this Court remanded the case to the trial court "for collection of the costs below and further proceedings pursuant to Tenn. Code Ann. § 20-12-119(c)." *Snyder I*, 450 S.W.3d at 519. On remand, the Bank filed a motion for costs and attorney's fees, arguing that, pursuant

10

to subsection -119(c), the maximum amount allowed should be taxed to the Surety as well as to Ms. Snyder. During the hearing on the motion, the Bank presented documentation of a $403.25 court reporter's fee and $57,238.75 in attorney's fees expended to defend against Ms. Snyder's complaint. The Bank conceded that pursuant to Tennessee Code Annotated § 20-12-119(c)(4), $10,000 was the maximum amount the court could award for costs and fees.

During the hearing, Ms. Snyder did not dispute the applicability of Tennessee Code Annotated § 20-12-119(c) to this case or the reasonableness of the Bank's claimed court reporter's fee and attorney's fees. It was also undisputed that none of the statutory exceptions delineated in Tennessee Code Annotated § 20-12-119(c)(5) applied in this case.[4] At the close of the hearing, the trial court accordingly awarded the Bank $10,000 in litigation costs. The court initially took under advisement the Bank's argument that this award should be taxed against the Surety as well as against Ms. Snyder. Upon consideration of supplemental briefs filed by the parties, the court entered a judgment taxing the statutory maximum of $10,000 in litigation costs to both Ms. Snyder and the Surety. In its argument on appeal, the Surety concentrates on the applicability of the award for attorney's fees without directly addressing the court reporter's fee.

Whether an award of attorney's fees pursuant to Tennessee Code Annotated § 20-12-119(c) properly may be entered against a principal's surety as well as the principal is a matter of first impression.[5] Prior to the filing of this opinion, Tennessee appellate courts have been called upon to review the recently enacted subsection -119(c) in only a handful of decisions, none of which has addressed the statute's applicability to a party's surety. *See, e.g.*, *Baxter Bailey Invs. LLC v. APL Ltd., Inc.*, No. W2015-00067-COA-R3-CV, 2015 WL 5560563 at *9 (Tenn. Ct. App. Sept. 21, 2015) (noting subsection 119(c) as an exception to the American Rule generally followed in Tennessee); *Davidson v. Baydoun*, No. M2014-01486-COA-R3-CV, 2015 WL 3455426 at *4 (Tenn. Ct. App. May 29, 2015) (concluding that the plaintiff erroneously invoked subsection 119(c) when appealing a grant of summary judgment on behalf of the defendant and when the original

---

[4] We note that in her January 2013 response to the motion to dismiss, Ms. Snyder stated: "While there are no reported cases in Tennessee, the Plaintiff has found authority from other jurisdictions which clearly shows that creditors must exercise a degree of caution when enforcing acceleration clauses in their mortgage [documents]." Ms. Snyder did not, however, plead that her claim was filed for "the express purpose of extending, modifying, or reversing existing precedent, law or regulation . . . ." *See* Tenn. Code Ann. § 20-12-119(c)(5)(E). Ms. Snyder did not argue the applicability of the exception contained in Tennessee Code Annotated § 20-12-119(c)(5)(E) during the hearing on the Bank's motion to award costs and attorney's fees, nor does she argue on appeal that this exception applies. Moreover, we determine that, under the specific facts of this case, Tennessee Code Annotated § 20-12-119(c)(5)(E) does not apply.

[5] Recognizing this issue of first impression as embracing an important question of law, we further note that the question may be appropriate for review by the Tennessee Supreme Court.

complaint had been filed prior to the subsection's enactment); *Arledge v. Arledge*, No. M2014-01344-COA-R3-CV, 2015 WL 3429918 at \*1 (Tenn. Ct. App. May 28, 2015) (concluding that a trial court's grant of a motion to dismiss must specify the ground of failure to state a claim upon which relief can be granted in order to trigger application of subsection -119(c)).

The trial court in its Memorandum Opinion, incorporated into the final judgment, properly began statutory interpretation of Tennessee Code Annotated § 20-12-119(c) by interpreting the plain meaning of the statute. *See In re Estate of Tanner*, 295 S.W.3d at 613 ("When a statute is clear, we apply the plain meaning without complicating the task."). The trial court stated in pertinent part:

> Looking to the language of Tenn. Code Ann. § 20-12-119 itself, it is clear the General Assembly does not use the term "surety," but only refers to the "party or parties." The statute uses the phrase "party or parties" numerous times, but never refers to a "surety." Thus, the literal wording of the statute does not address the situation in which a surety would be responsible for the costs under these circumstances.

We agree with the trial court that the plain language of Tennessee Code Annotated § 20-19-119(c) makes no mention of taxing a surety with litigation costs as defined in subsection -119.

The trial court also analyzed the plain language of Tennessee Code Annotated § 20-12-119(c) in terms of whether the directives therein are mandatory or discretionary, finding that they are mandatory. We agree with this determination also. As the trial court noted, the General Assembly used the auxiliary verb, "shall," throughout the subsection rather than the auxiliary verb, "may." *See Bellamy v. Cracker Barrel Old Country Store, Inc.,* 302 S.W.3d 278, 281 (Tenn. 2009) ("'When 'shall' is used . . . it is ordinarily construed as being mandatory and not discretionary.'") (quoting *Stubbs v. State,* 393 S.W.2d 150, 154 (Tenn. 1965)). Our Supreme Court has explained further that "[t]o determine whether the use of the word 'shall' in a statute is mandatory or merely directory, we look to see 'whether the prescribed mode of action is of the essence of the thing to be accomplished.'" *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 309 (Tenn. 2012) (quoting 3 Norman J. Singer & J.D. Singer, *Statutes and Statutory Construction* § 57:2 (7th ed. 2008)). We determine that the award to the party or parties against whom the dismissed claims were pending, the items to be included in that award, and the manner in which the award is to be granted are fundamental to the award of litigation costs set forth in the statute. The implementation of "shall" in the statute therefore dictates that we construe such requirements as mandatory. *See, e.g., Myers*, 382 S.W.3d at 309.

12

We generally review an award of discretionary costs according to an abuse of discretion standard. *See* Tenn. Code Ann. § 20-12-119(a)-(b); *Placencia v. Placencia*, 3 S.W.3d 497, 503 (Tenn. Ct. App. 1999) ("Absent a clear abuse of discretion, appellate courts generally will not alter a trial court's ruling with respect to costs."). Under Tennessee Code Annotated § 20-12-119(c), this Court continues to review the trial court's factual determination of whether litigation costs, including attorney's fees, are reasonable under an abuse of discretion standard. *See Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011). In addition, in applicable cases, a trial court's determination of whether a *pro se* litigant has "acted unreasonably in bringing, or refusing to voluntarily withdraw, the dismissed claim" would be reviewed under an abuse of discretion standard. *See* Tenn. Code Ann. § 12-20-119(c)(5)(D) (excepting a *pro se* litigant from application of -119(c) in certain circumstances). However, apart from these specific factual determinations, the standard of review for the award of litigation costs pursuant to Tennessee Code Annotated § 20-12-119(c) is a matter of law due to the mandatory language of the statute. As noted previously, we review matters of law *de novo* with no presumption of correctness. *See Cunningham*, 405 S.W.3d at 43.

The trial court in its Memorandum Opinion proceeded to analyze Tennessee Code Annotated § 20-12-119(c) within the statutory scheme of Title 20 ("Civil Procedure") and Chapter 12 ("Costs") as a whole, concluding that "the mere absence of 'surety' from this specific provision is not conclusive as to the intent of the General Assembly." Rather than moving immediately to such global analysis, however, we determine it necessary to further analyze the plain language of subsection -119(c) itself.

Subsection -119(c) specifically defines "costs" for the purposes of this subsection as including:

> all reasonable and necessary litigation costs actually incurred due to the proceedings that resulted from the filing of the dismissed claims, including, but not limited to:
>
> (A)  Court costs;
> (B)  Attorney's fees;
> (C)  Court reporter fees;
> (D)  Interpreter fees; and
> (E)  Guardian ad litem fees.

Tenn. Code Ann. § 20-12-119(c)(2) (emphasis added). We stress that when a term is expressly defined in a statute, we must look to the statutory definition rather than other sources unless the statutory definition proves insufficient or ambiguous. *See, e.g.,*

13

*Shockley v. Mental Health Coop., Inc.,* 429 S.W.3d 582, 591 (Tenn. 2013) (defining a term according to its "plain and ordinary" meaning, "including dictionary definitions," only after determining that the statute at issue did not define the term); *see also Najo Equip. Leasing, LLC v. Comm'r of Revenue*, ___ S.W.3d ___, ___, No. W2014-01096-COA-R3-CV, 2015 WL 1873215 at *8 (Tenn. Ct. App. Apr. 23, 2015) ("'If the statute does not sufficiently define a word used therein, the court may consider all known definitions of the word, including dictionary definitions, in order to determine the plain and ordinary meaning of the word.'") (quoting 82 C.J.S. *Statutes* § 415) (emphasis added).

In contrast to the inclusion of attorney's fees in this statutory definition, Tennessee generally adheres to the "American Rule," under which "'attorneys' fees are not recoverable in the absence of a statute or contract *specifically* providing for such recovery . . . .'" *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 309 (Tenn. 2009) (quoting *Pullman Standard, Inc. v. Abex Corp.*, 693 S.W.2d 336, 338 (Tenn. 1985) (emphasis in *Cracker Barrel*). It is undisputed, however, that in enacting Tennessee Code Annotated § 20-12-119(c), the General Assembly has specifically provided for the recovery of attorney's fees within the maximum amount of litigation costs to be awarded. Furthermore, the General Assembly has specifically defined litigation "costs" for the purposes of this statute as including attorney's fees. *See* Tenn. Code Ann. § 20-12-119(c)(2).

The Surety does not dispute that the definition of litigation "costs" provided in Tennessee Code Annotated § 20-12-119(c)(2) includes attorney's fees insofar as which costs the trial court shall tax to the party whose complaint is dismissed pursuant to Rule 12.02(6). The Surety focuses its argument on the absence of the word "surety" in the statute, contending that taxing costs to a "party" does not include taxing those costs to the party's surety. In the instant action, the Surety drafted the following cost bond, which was attached to the complaint:

**COST BOND**

We recognize ourselves as surety <u>for all costs and taxes in this cause</u> in accordance with *Tenn. Code Ann. §20-12-120.*

(Underlined emphasis added.) The cost bond was signed by Mark E. Brown, as counsel for Ms. Snyder and President of the Surety. The Surety indicated in its cost bond that it was complying with Tennessee Code Annotated § 20-12-120, which provides:

**Security given by plaintiff. –** No leading process shall issue from any court without security being given by the party at whose instance the action

14

is brought for the successful prosecution of the party's action, and, in case of failure, for the payment of <u>court costs</u> and taxes that may be awarded against the party, unless in cases and instances specifically excepted.

(Emphasis added.)

The Surety asserts that the trial court's interpretation of Tennessee Code Annotated § 20-12-119(c) as applicable to the Surety is in conflict with the requirement of security for "court costs and taxes" set forth in Tennessee Code Annotated § 20-12-120. The Surety argues that "[t]he statute [subsection 119(c)] itself creates a distinction between costs and attorney fees." We disagree with the Surety's interpretation in this regard. The plain language of subsection -119(c) creates a distinction between "court costs" and "attorney's fees," both of which are specifically included within the statutory definition of litigation "costs" for purposes of defining "all reasonable and necessary litigation costs actually incurred due to the proceedings that resulted from the filing of the dismissed claims . . . ." *See* Tenn. Code Ann. § 20-12-119(c)(2). The statute thus also creates a distinction, for purposes of applying subsection -119(c), between litigation "costs" in the broader sense and specific "court costs."

We do find, however, that in the case at bar, the Surety limited its liability through the language of its cost bond. The trial court stated in its Memorandum Opinion that the Surety had "used no words of limitation in this self-authored cost bond." To the contrary, we determine that in explicitly drafting its cost bond "in accordance with" Tennessee Code Annotated § 20-12-120, the Surety limited its liability to "court costs and taxes" as defined in section -120, rather than the broader umbrella of litigation "costs" as defined in subsection -119(c). We therefore conclude that pursuant to the plain language of Tennessee Code Annotated §§ 20-12-119(c) and 20-12-120, the cost bond, <u>as drafted and filed in this case</u>, did not commit the Surety to liability for the court reporter's fee and attorney's fees.[6] Inasmuch as we determine the plain language of Tennessee Code Annotated § 20-12-119(c) to be clear and unambiguous as pertinent to this issue, we further determine the trial court's detailed analysis of the surrounding statutory scheme[7]

---

[6] Confining our analysis to the facts of this case, we do not address whether a surety who had not limited its liability for "costs" in any way would be liable for the full $10,000 judgment of litigation costs pursuant to Tennessee Code Annotated 20-12-119(c). As a point of practice, we suggest that attorneys acting as sureties draft cost bonds with the distinction between "court costs" and broader litigation "costs," as defined in Tennessee Code Annotated § 20-12-119(c), clearly in mind.

[7] In particular, upon the Bank's argument that the General Assembly previously had specifically excluded an attorney standing as a surety from liability for certain types of costs whenever such exclusion was intended, the trial court reviewed Tennessee Code Annotated § 20-12-135, -136 (2009) (excluding the surety from liability for "discretionary costs"). The trial court determined that pursuant to the mandatory language of Tennessee Code Annotated § 20-12-119(c), the costs adjudged were not discretionary.

and the applicable legislative history[8] to be unnecessary. *See In re Estate of Tanner*, 295 S.W.3d at 614 ("It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources.").

## VI. Costs and Attorney's Fees on Appeal

The Bank asserts that this appeal is frivolous. The Bank thereby requests an award of costs and attorney's fees on appeal pursuant to Tennessee Code Annotated § 27-1-122 (2000), which provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

We determine that this appeal was not frivolous or taken solely for delay. Moreover, as this Court has stated:

> [I]t is in the sole discretion of this court whether to award attorney's fees on appeal. As such, when this Court considers whether to award attorney's fees on appeal, we must be mindful of "the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that need be considered."

*Parris v. Parris*, No. M2006-02068-COA-R3-CV, 2007 WL 2713723 at *13 (Tenn. Ct. App. Sept. 18, 2007) (quoting *Dulin v. Dulin*, No. W2001-02969-COA-R3-CV, 2003 WL 22071454 at *10 (Tenn. Ct. App. Sept. 3, 2003)) (other internal citations omitted). Upon careful consideration of all the factors listed above, particularly the Surety's success on appeal, the Bank's request for costs and attorney's fees on appeal is denied.

---

[8] Upon Ms. Snyder's motion, this Court entered an order on July 31, 2015, taking "judicial notice of the legislative history of the statute submitted as an addendum to the appellant's brief." Ms. Snyder subsequently resubmitted to this Court audio recordings of the legislative discussion surrounding the enactment of Tennessee Code Annotated § 20-12-119(c) with no objection from the Bank. These audio recordings had also been submitted to and reviewed by the trial court. *See* Debate on H.B. 3124 Before the House, 107th Gen. Assemb. (Apr. 24, 2012).

## VII. Conclusion

For the reasons stated above, we reverse the trial court's judgment against the Surety for $10,000 in litigation costs. We affirm the trial court's judgment against the principal. The Bank's request for an award of costs and attorney's fees on appeal is denied. This case is remanded to the trial court for enforcement of the judgment against the principal and collection of costs below. Costs on appeal are taxed to the appellee, First Tennessee Bank, N.A.

_____
THOMAS R. FRIERSON, II, JUDGE

17