IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 25, 2024 Session

## TANNA GORDON ET AL. v. STATE OF TENNESSEE

**Appeal from the Tennessee Claims Commission**
**No. T20203117-01**
**Commissioner Jim Hamilton, TN. Claims Commission (Western Division),**

**No. W2023-01012-COA-R3-CV**
_____

The State appeals a judgment against it for an injury caused by the gross negligence of its employees in the creation or maintenance of a dangerous condition on state-owned property. Because we conclude that the Tennessee Claims Commission lacks subject matter jurisdiction over claims for gross negligence, we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Claims Commissioner
Reversed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ARNOLD B. GOLDIN, J., joined.

Jonathan Skrmetti, Attorney General and Reporter; J. Matthew Rice, Solicitor General; Mary Elizabeth McCullohs, Senior Assistant Attorney General, for the appellee, State of Tennessee.

Edward L. Martindale, Jr., and Jessee Leigh Snider, Jackson, Tennessee, for the appellee, Tanna Gordon, Individually and as Next Friend and Natural Guardian of Mali Vowell, a minor.

## OPINION

### I.   PROCEDURAL AND FACTUAL BACKGROUND

On May 18, 2020, Mali Rain Vowell ("the Child"), a minor, was injured when she cut her foot on a piece of broken metal pipe below the surface of the water in the lake at Chickasaw State Park. In July 2020, the Child's mother, Tanna Gordon, filed a claim against the State of Tennessee ("the State") in the Tennessee Claims Commission ("the

Claims Commission"), both individually and on behalf of the Child. Although Ms. Gordon was the only signatory to the complaint, because claims were brought by both Ms. Gordon, individually, and on behalf of the Child, we, like the parties, refer to them as "Claimants" throughout this Opinion.

According to the complaint, the Child suffered severe and permanent injuries as a result of the cut. Claimants therefore asserted that the State was liable under Tennessee Code Annotated section 9-8-307(a)(1)(C), relating to negligently created or maintained dangerous conditions on State property. Claimants sought $100,000.00 in compensatory damages.

The State answered the complaint, denying the material allegations in the complaint and raising as an affirmative defense the recreational use statute, Tennessee Code Annotated sections 70-7-102 through -104. The State's later motion to dismiss and/or for summary judgment was denied by the Claims Commission by order of June 1, 2022, and the matter was heard on March 6, 2023.

On May 4, 2023, the Claims Commission issued a detailed written order and judgment finding that the State was negligent in failing to remove the "remnant of the original pole [that] was still embedded in the lakebed." The Claims Commission further found that the "broken metal pole with its jagged edges which was allowed to remain embedded in the lakebed constituted a dangerous condition" and that the State had actual knowledge of the condition.[1] The Claims Commission also found that the Child's injury was foreseeable and proximately caused by the State's negligence. Finally, the Claims Commission noted that the Child had sustained serious injuries as a result of the State's negligence, which necessitated two separate surgeries but did not result in a permanent impairment. The Claims Commission therefore awarded Claimants a total of $56,893.19, including both economic damages for medical care and noneconomic damages for pain and suffering and the loss of the ability to enjoy life.

On May 23, 2023, the State filed a motion to alter or amend the Claims Commission's ruling, pointing out that the judgment failed to consider the State's affirmative defense under Section 70-7-102. In the accompanying memorandum, the State argued that because the Child was using the State's property for a recreational use, it was immune from liability under the recreational use statute. Although the State noted two exceptions to the immunity provided by that statute—as relevant to this appeal, that the landowner had committed gross negligence or willful or wanton conduct that resulted in a failure to guard or warn against a dangerous condition—the State argued that neither were

---

[1] In support of its finding that the State had actual knowledge of the dangerous condition of the broken pipe, the Claims Commission noted that (1) a replacement pole was installed, which could only have been done when the water in the lake was "drawn down," exposing the broken pipe; (2) the broken pipe was filled with a silicone-like substance, but not smoothed down; and (3) the installation of the new pole and the filling of the broken pole would only have been performed by State employees.

present in this case.

On June 12, 2023, the Claims Commission issued an amended judgment noting the applicability of the recreational use statute but ruling that the State committed gross negligence in recognizing the danger posed by the broken metal pipe but doing nothing to actually eliminate the danger. The Claims Commission therefore found that an exception existed to the immunity provided by the recreational use statute; the damages against the State were reaffirmed. From this order, the State appeals.

## II. ISSUES PRESENTED

The State raises the following issues for our review, which are taken from its brief:

1. Whether the Claims Commission lacked subject matter jurisdiction to hold the State liable under the gross-negligence exception to the recreational use statute, when the State's sovereign immunity has not been waived for acts of gross negligence.
2. Alternatively, whether the evidence preponderates against the Claims Commission's finding of gross negligence.

## III. ANALYSIS

"[T]he State of Tennessee, as a sovereign, is immune from suit except as it consents to be sued." **Stewart v. State**, 33 S.W.3d 785, 790 (Tenn. 2000) (quoting **Brewington v. Brewington**, 215 Tenn. 475, 480, 387 S.W.2d 777, 779 (Tenn. 1965)). "[T]he Tennessee Constitution has modified this rule of absolute sovereign immunity by providing that '[s]uits may be brought against the State in such manner and in such courts as the Legislature may by law direct.'" **Id.** (quoting Tenn. Const. art. I, § 17). As the Tennessee Supreme Court has explained,

> Pursuant to its constitutional power to provide for suits against the state, the legislature created the Tennessee Claims Commission in 1984 to hear and adjudicate certain monetary claims against the State of Tennessee. *See* Tenn. Code Ann. §§ 9-8-301 to 307 (1999). While the Claims Commission has exclusive jurisdiction to hear claims arising against the state, *cf.* Tenn. Code Ann. § 20-13-102(a) (1994), this jurisdiction is limited only to those claims specified in Tennessee Code Annotated section 9-8-307(a). If a claim falls outside of the categories specified in section 9-8-307(a), then the state retains its immunity from suit, and a claimant may not seek relief from the state.

**Stewart**, 33 S.W.3d at 790 (citation and footnote omitted). Pursuant to Tennessee Code Annotated section 9-8-307(a)(3), "the jurisdiction of the claims commission [is to be] liberally construed to implement the remedial purpose of the legislation." This liberality,

however, "does not authorize the amendment, alteration or extension of its provisions beyond [the statute's] obvious meaning." ***Pollard v. Knox Cnty.***, 886 S.W.2d 759, 760 (Tenn. 1994). As a result,

> when deciding whether a claim is within the proper statutory scope of the Commission's jurisdiction to hear and decide claims against the State of Tennessee, we will give a liberal construction in favor of jurisdiction, but only so long as (1) the particular grant of jurisdiction is ambiguous and admits of several constructions, and (2) the most favorable view in support of the petitioner's claim is not clearly contrary to the statutory language used by the General Assembly.

***Stewart***, 33 S.W.3d at 791 (quotation marks and citation omitted). Finally, "because issues of statutory construction are questions of law, we review the issues involving the jurisdiction of the Claims Commission de novo without any presumption that the legal determinations of the commissioner were correct." ***Id.*** (internal citation omitted).

Here, there is no dispute that Claimants brought this suit under Tennessee Code Annotated section 9-8-307(a)(1)(C), which provides that the Claims Commission has jurisdiction over claims against the State involving "[n]egligently created or maintained dangerous conditions on state controlled real property." The State further asserts that under the recent Tennessee Supreme Court case of ***Lawson v. Hawkins County***, the word "negligently" in section 9-8-307(a)(1)(C), must be read to exclude claims of gross negligence. 661 S.W.3d 54, 63 (Tenn. 2023). And because the Claims Commission found that the State was grossly negligent, as required to avoid the immunity provided by the recreational use statute, the State asserts that the Claims Commission lacked subject matter jurisdiction to award Claimants damages in this matter. In other words, the State argues that Claimants find themselves in the proverbial catch-22, where the State is immune from a claim of negligence under the recreational use statute while also immune from a claim of gross negligence under the Claims Commission Act, and that Claimants cannot recover regardless of the State's level of culpability. Unfortunately, we agree.

We begin first with a discussion of the ***Lawson*** opinion. In ***Lawson***, the plaintiff filed a complaint against the defendant county under the Tennessee Governmental Tort Liability Act ("GTLA") after her husband was killed in a car accident. 661 S.W.3d at 57. The plaintiff's complaint accused the county of gross negligence and recklessness. ***Id.*** at 57–58. The central question before the Tennessee Supreme Court was whether the GTLA "allows a plaintiff to sue a governmental entity for employee conduct that exceeds mere negligence." ***Id.*** at 58. The Tennessee Supreme Court ultimately held that it did not.

In reaching this result, the court first considered the plain language of the GTLA, which provides that governmental immunity is removed for an "injury proximately caused by a negligent act or omission of any employee within the scope of his employment." ***Id.***

- 4 -

at 60 (quoting Tenn. Code Ann. § 29-20-205); *see also id.* at 59 ("When a statute uses a common-law term without defining it, we assume the enacting legislature adopted the term's common-law meaning 'unless a different sense is apparent from the context, or from the general purpose of the statute.'" (quoting ***In re Est. of Starkey***, 556 S.W.3d 811, 817 (Tenn. Ct. App. 2018))). The court therefore considered how the term "negligence" had been defined by the common law at the time of the GTLA's passage in 1973. According to the court, it had "long defined negligence as the 'want of ordinary care.'" *Id.* at 61 (collecting cases). Moreover, the court noted that negligence "does not require proof that the defendant intended to harm the plaintiff or of any other mental state." *Id.*

In contrast, the court explained that claims of recklessness and gross negligence both require proof of the defendant's subjective state of mind or mental state. *Id.* In particular, the court observed that gross negligence requires a "mental attitude . . . of indifference to injurious consequences, conscious recklessness of the rights of others." *Id.* (quoting ***Craig v. Stagner***, 159 Tenn. 511, 19 S.W.2d 234, 236 (1929), *abrogated on other grounds by **McIntyre v. Balentine***, 833 S.W.2d 52 (Tenn. 1992)). The court noted that this distinction "led Tennessee courts to attach different legal consequences to grossly negligent behavior." *Id.* at 62. And the court further noted that the plaintiff had presented "no precedent using the term 'negligence' to encompass grossly negligent or reckless conduct." *Id.*

The court next looked at the statutory context of section 29-20-205. It remarked that "[w]hen interpreting a statute, we generally presume that when the legislature uses one term in one part of a statute, and a different term elsewhere in the same or a related statute, those terms mean different things." *Id.* at 63. Specifically, the court noted that the General Assembly had used both "negligent" and "gross negligence" in section 29-20-205 and a related statutory provision. *Id.* (citing Tenn. Code Ann. § 29-20-205(10) (involving a now-repealed 2020 amendment to the GTLA providing an exception to the general waiver of immunity for injuries "arising from COVID-19" unless the claimant can prove "gross negligence")). According to the court, "[t]he General Assembly's use of both 'negligent' and 'gross negligence' in the very same section suggests that it understood the difference in meaning between those two terms and used them intentionally." *Id.*

Likewise, the court noted that Tennessee Code Annotated section 29-20-108 "grants immunity to certain entities and individuals that provide emergency communication services 'except in cases of gross negligence' or 'gross negligence or willful misconduct.'" *Id.* at 64 (quoting Tenn. Code Ann. § 29-20-108(a)–(c), (e)). And "the General Assembly's decision to use 'gross negligence' instead of simply 'negligence' suggests that it did not view the terms as synonyms." *Id.* Thus, the Tennessee Supreme Court ultimately concluded that the GTLA "removes immunity only for 'negligent' employee acts. Common-law precedent and statutory context make clear that the term 'negligent' in section -205 means

ordinary negligence, not gross negligence or recklessness." **Id.**[2]

The State argues that although this case involves the Claims Commission Act, rather than the GTLA, the result should be the same. The State points out that like the provision of the GTLA at issue in **Lawson**, the provision of the Claims Commission Act at issue here only provides for the removal of immunity for "[n]egligently created or maintained dangerous conditions on state controlled real property." Tenn. Code Ann. § 9-8-307(a)(1)(C). The term "negligently" as used in section 9-8-307 is not defined by the Claims Commission Act. And because the Claims Commission Act was enacted more than ten years after the GTLA, **Stewart**, 33 S.W.3d at 790, the clear distinction between negligence and either gross negligence or recklessness was long present in our case law at the time the Claims Commission Act was enacted. So again, the General Assembly's use of the two terms indicates "that it understood the difference in meaning between those two terms and used them intentionally." **Lawson**, 661 S.W.3d at 63. Moreover, like section 29-20-205, section 9-8-307 was also amended in 2020 to provide for an exception to any other waiver of immunity for injuries arising from COVID-19, "unless the claimant proves by clear and convincing evidence that the loss, damage, injury, or death was proximately caused by an act or omission of the state or an employee or agent of the state constituting gross negligence." And other provisions of the Claims Commission Act likewise use the term gross negligence, again suggesting that the General Assembly does not view those terms synonymously. *See* Tenn. Code Ann. § 9-8-111(b)(3) (providing that the State is not liable for loss, damage, or destruction of a motor vehicle if the loss "resulted from the employee's gross negligence"); Tenn. Code Ann. § 9-8-112(a)(1)–(2) (providing that the board of claims would pay final judgments for state employees who were acting in good faith in the scope of their official duty and under lawful orders unless "the employee's conduct amounted to gross negligence or willful, intentional or malicious conduct").

We agree with the State that the analysis by the Tennessee Supreme Court in **Lawson** applies with equal effect to the Claims Commission Act. Here, the accepted definitions of negligence, gross negligence, and recklessness were distinct at the time of the enactment of the Claims Commission Act and the GTLA. The Claims Commission Act, like the GTLA, uses gross negligence in both the specific statutory section at issue and other sections, indicating that the General Assembly understood that negligence and gross negligence were distinct legal concepts. As such, it is difficult to conclude that the rule adopted in **Lawson** should not be equally applicable here.

There is one distinction between the GTLA and the Claims Commission Act that must be considered, however. While the GTLA is to be strictly construed, **Lawson**, 661

---

[2] The Tennessee Supreme Court in **Lawson** went further to address, and ultimately reject, certain concerns that were expressed by this Court in its intermediate appellate decision in **Lawson**. *See id.* 64–66. For example, our supreme court rejected the notion that its holding incentivized governmental employees to act recklessly because employees could still be held personally liable for such conduct. *Id.* at 65–66.

- 6 -

S.W.3d at 60, the Claims Commission Act is to be liberally construed to affect its remedial purpose. Tenn. Code Ann. § 9-8-307(a)(3). Still, this Court has held that even when a rule is subject to a liberal construction, "we cannot extend the language beyond its usual, ordinary, or plain meaning." **Shockley v. Mental Health Coop., Inc.**, 429 S.W.3d 582, 591 (Tenn. Ct. App. 2013) (involving a rule of civil procedure). And as previously discussed, we may only employ a liberal construction of the statute when, inter alia, "the particular grant of jurisdiction is ambiguous and admits of several constructions[.]" **Stewart**, 33 S.W.3d at 791.

In our view, reference to outside definitions of a word does not automatically render a statute's words ambiguous, but merely guides the court in determining "the plain and ordinary meaning of the word." **Shockley**, 429 S.W.3d at 591 (quoting 82 C.J.S. *Statutes* § 415); *see also* **Gardner v. Brown**, 5 F.3d 1456, 1459 (Fed. Cir. 1993) (holding that the legislature "is not required to define each and every word in a piece of legislation in order to express clearly its will. A phrase appearing in the context of a statute may be unambiguous where it 'has a clearly accepted meaning in both legislative and judicial practice,' even though it is not explicitly defined by the statutory text." (internal citation omitted)), *aff'd,* 513 U.S. 115, 115 S. Ct. 552, 130 L. Ed. 2d 462 (1994). Thus, even where the Tennessee Supreme Court has resorted to consideration of outside definitions to ascertain the meaning of the terms of a statute, it has held that the statute was unambiguous so long as those definitions "make[] clear the legislature's intent[.]" **Bryant v. Genco Stamping & Mfg. Co.**, 33 S.W.3d 761, 766 (Tenn. 2000) (looking to the dictionary definition of the term "physical" but nevertheless holding that the statute was unambiguous); *see also, e.g.*, **State v. Welch**, 595 S.W.3d 615, 623 (Tenn. 2020) (relying on *Black's Law Dictionary* to define a term in a statute and hold that it was unambiguous); **Pragnell v. Franklin**, No. E2022-00524-COA-R3-CV, 2023 WL 2985261, at *10 (Tenn. Ct. App. Apr. 18, 2023) (holding that because "Tennessee courts have defined the prima facie case standard in other contexts, . . . it [is] a term with a well-recognized meaning in the common law").

The same is true of consideration of the broader statutory context of a statute. As the Tennessee Supreme Court has explained,

> In determining whether statutory language is ambiguous, courts are not to put on blinders to all considerations outside the specific text in question. In all cases involving statutory construction, judges must look not only at "the language of the statute," but also "its subject matter, the object and reach of the statute, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment." **Spires** [**v. Simpson**], 539 S.W.3d [134,] 143 [Tenn. 2017)] (quoting [**State v.**] **Collins**, 166 S.W.3d [721,] 726 [(Tenn. 2005)]) (citation omitted) (internal quotation marks omitted). Furthermore, statutes should not be interpreted in isolation. The overall statutory framework must be considered, and

> "[s]tatutes that relate to the same subject matter or have a common purpose must be read *in pari materia* so as to give the intended effect to both." ***In re Kaliyah S.***, 455 S.W.3d 533, 552 (Tenn. 2015). Depending on the circumstances of a given case, consideration of the statute's purpose, its evolution over the course of time, and a longstanding interpretation by the affected parties may be needed to properly evaluate whether a proffered alternate interpretation is "a nonsensical or clearly erroneous interpretation of a statute." ***Powers v. State***, 343 S.W.3d 36, 50 n.20 (Tenn. 2011) (discussing ambiguity).

***Coffee Cnty. Bd. of Educ. v. City of Tullahoma***, 574 S.W.3d 832, 845–46 (Tenn. 2019). Thus, it appears that a statute is only ambiguous and cannot be enforced "as written" if its meaning cannot be determined after considering the above information. *See* ***State v. Deberry***, 651 S.W.3d 918, 925 (Tenn. 2022) (stating that we enforce a statute "as written" after determining that the statute's meaning was clear through consideration "of the statutory text, the broader statutory framework, and any relevant canons of statutory construction").[3] As a result, resort to well-recognized definitions or the broader statutory scheme does not, ipso facto, render a statute ambiguous, if those sources make the statute's meaning clear.

In ***Lawson***, the Tennessee Supreme Court specifically held that Tennessee law "make[s] **clear** that the term "negligent" refers to ordinary negligence, not gross negligence or recklessness[,]" after considering the common-law meaning of the terms and the statutory context. ***Lawson***, 661 S.W.3d at 64 (emphasis added). And even this Court in ***Lawson***, in holding that gross negligence and recklessness were merely "heightened forms of negligence," conceded that they were nevertheless distinct legal concepts and never concluded that the term "negligent" in the GTLA was ambiguous. ***Lawson v. Hawkins Cnty.***, No. E2020-01529-COA-R3-CV, 2021 WL 2949511, at *7 (Tenn. Ct. App. July 14, 2021), *rev'd and remanded*, 661 S.W.3d 54 (Tenn. 2023). Nor do Claimants assert in this appeal that the use of the term "negligently" in section 9-8-307(a)(1)(C) is ambiguous for purposes of the rule of liberality or cite any caselaw suggesting as such.[4]

---

[3] We recognize that some other cases hold the opposite, including some from the Tennessee Supreme Court. *See, e.g.*, ***In re Est. of Tanner***, 295 S.W.3d 610, 614 (Tenn. 2009) ("It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources."); *see also* ***M.R.D. v. Univ. of Tenn. at Knoxville***, 689 S.W.3d 826, 833 (Tenn. Ct. App. 2023), (quoting this language from ***Estate of Tanner***); ***Little v. City of Chattanooga***, 650 S.W.3d 326, 354 (Tenn. Ct. App. 2022) (same). In this case, however, we hew to the most recent pronouncements of the Tennessee Supreme Court specifically addressing this subject and conclude that in considering other sections of the GTLA, the Tennessee Supreme Court did not impliedly hold that the term "negligent" was ambiguous in ***Lawson***.

[4] Claimants' brief does not actually argue in any fashion that the Claims Commission Act should be liberally construed. The bulk of Claimants' argument is set forth in footnote 5, *infra*. Rather, this issue was raised in the State's brief.

"Where a right of action is dependent upon the provisions of a statute . . . we are not privileged to create such a right under the guise of a liberal interpretation of it." ***Hamby v. McDaniel***, 559 S.W.2d 774, 777 (Tenn. 1977). In this case, the Tennessee General Assembly appears to have understood the distinction between ordinary negligence and gross negligence, as it did not use those terms synonymously throughout the Claims Commission Act and those terms are well understood in this State. *Cf. generally* ***Sneed v. City of Red Bank, Tennessee***, 459 S.W.3d 17, 23 (Tenn. 2014) (holding that the court presumes that the legislature "knows the state of the law" when it enacts new laws). Indeed, other than the single instance involving COVID-19 claims, in each other instance where gross negligence or other heightened types of culpability are mentioned in the Claims Commission Act, it is to ensure that the State is **not** responsible for claims arising from that level of culpability by its employees. *See* Tenn. Code Ann. § 9-8-111(b)(3); Tenn. Code Ann. § 9-8-112(a)(1)–(2). Thus, reading section 9-8-307 in harmony with sections 9-8-111 and 9-8-112 confirms the State's fairly unwavering commitment to not be responsible for claims arising from an employee's gross negligence or other types of heightened culpability outside the realm of the COVID-19 pandemic. *C.f. generally* ***In re Kaliyah***, 455 S.W.3d at 552. Thus, a conclusion that the Claims Commission was not granted jurisdiction over damages claims arising from gross negligence or recklessness perhaps applies with even more force in this case than under the GTLA. Under these circumstances, we cannot conclude that an ambiguity exists such that section 9-8-307(a)(1)(C) admits of several constructions as to whether claims for gross negligence related to dangerous conditions on State property are within the subject matter jurisdiction of the Claims Commission.

Rather than argue for a liberal construction of the Claims Commission Act, Claimants assert that their claim must be considered not only in light of that act, but also in light of the recreational use statute. A brief overview of the recreational use statute is therefore helpful.

Pursuant to Tennessee Code Annotated section 70-7-102,

The landowner, lessee, occupant, or any person in control of land or premises owes no duty of care to keep such land or premises safe for entry or use by others for such recreational activities as hunting, fishing, trapping, camping, water sports, white water rafting, canoeing, hiking, sightseeing, animal riding, bird watching, dog training, boating, caving, fruit and vegetable picking for the participant's own use, nature and historical studies and research, rock climbing, skeet and trap shooting, sporting clays, shooting sports, and target shooting, including archery and shooting range activities, skiing, off-road vehicle riding, and cutting or removing wood for the participant's own use, nor shall such landowner be required to give any warning of hazardous conditions, uses of, structures, or activities on such land or premises to any person entering on such land or premises for such

purposes, except as provided in § 70-7-104.

Tenn. Code Ann. § 70-7-102(a). The statute makes clear that "landowner" as used in the statutes, "includes any governmental entity." Tenn. Code Ann. § 70-7-101(2)(B). Thus, the statute generally provides that landowners do not owe a duty of care or a duty to warn to persons using land for the participant's own recreational uses.

Tennessee Code Annotated section 70-7-104, however, provides for two exceptions to this general grant of immunity:

> This part does not limit the liability that otherwise exists for:
> (1) Gross negligence, willful or wanton conduct that results in a failure to guard or warn against a dangerous condition, use, structure or activity; or
> (2) Injury caused by acts of persons to whom permission to hunt, fish, trap, camp, hike, sightsee, cave, recreational noncommercial aircraft operations or recreational noncommercial ultra light vehicle operations on private airstrips, or any other legal purpose was granted, to third persons or to persons to whom the person granting permission, or the landowner, lessee, occupant, or any person in control of the land or premises, owed a duty to keep the land or premises safe or to warn of danger.

Tenn. Code Ann. § 70-7-104(a). Our analysis of whether the Recreation Use statute applies is therefore divided into two inquiries: "(1) whether the activity alleged is a recreational activity as defined by the statute; and if so, (2) whether any of the statutory exceptions or limitations to the immunity defense are applicable." **Parent v. State**, 991 S.W.2d 240, 243 (Tenn. 1999).

Here, there is no dispute that the Child was using State-owned land for a recreational activity as defined by the statute. However, the Claims Commission found that state employees acted with gross negligence in failing to remove or warn of the broken pipe, such that the first exception to the recreational use statute's immunity could be imposed. As we perceive it, Claimants argue that the Claims Commission Act must be read in conjunction with the exception to immunity provided by the recreational use statute to allow the claim for gross negligence under these circumstances.[5]

_____

[5] Respectfully, Claimants' argument on this issue is scant. In relevant part, Claimants argue as follows:

[Discussion of why the GTLA does not apply to claims against the State.]

The Claimants submit that any removal of "gross negligence," as set forth in **Lawson v. Hawkins County**, 661 S.W.3d 54 (Tenn. 2023), is simply removal of gross negligence from claims that arise under the Governmental Tort Liability Act and, therefore, should not apply to the case at bar. The Claimants further submit that the removal of "gross negligence" from the Claims Commission Act would bar any future awards and/or claims

- 10 -

The Tennessee Supreme Court previously considered the intersection of the Claims Commission Act and the recreational use statute in *Parent v. State*. In *Parent*, the plaintiffs' child was also injured at a state park.[6] *Id.* at 241. The plaintiffs thereafter filed a claim against the State in the Claims Commission, arguing that the State negligently created or maintained a dangerous condition that caused their son's accident. The State responded, arguing that the claim failed to state a claim upon which relief could be granted and that it was immune from suit under the recreational use statute. *Id.* at 241–42. The Claims Commission dismissed the action, but the Court of Appeals reversed.

As the first issue on appeal, our supreme court addressed the question of whether the plaintiffs' complaint needed to allege one of the exceptions to immunity found in the recreational use statute. The court concluded that it did not. In reaching this result, the *Parent* court explained that the recreational use statute provided only "statutory immunity in certain cases" for the general liability already provided by section 9-8-307(a)(1)(C):

> The statutory right against the State as a landowner is codified at Tenn. Code Ann. § 9-8-307(a)(1)(C). *See Sanders v. State*, 783 S.W.2d 948 (Tenn. Ct. App. 1989) (recognizing that Tenn. Code Ann. § 9-8-307(a)(1)(C) removes the State's immunity and codifies the common law obligations of the owner or occupier of land). The State generally may be held liable for "[n]egligently created or maintained dangerous conditions on state controlled real property." Tenn. Code Ann. § 9-8-307(a)(1)(C); *see generally Hames v. State*, 808 S.W.2d 41 (Tenn. 1991); *Byrd v. State*, 905 S.W.2d 195 (Tenn. Ct. App. 1995); *Sanders*, 783 S.W.2d at 948. The cause of action is expressly provided for and is under the exclusive jurisdiction of the Tennessee claims commission. Accordingly, all monetary claims against the State for dangerous or defective conditions on real property are subject to the procedures, guidelines, and monetary award caps of the claims commission.
>
> The State's general liability for negligently maintained real property is subject to statutory immunity in certain cases. Tennessee Code Annotated §§ 70-7-101 *et seq.* provides the State with limited immunity for injuries

under the Tennessee Claims Commission Act, specifically those requesting recovery under the recreational use defense found specifically at T.C.A. §70-7-101, et seq.

[Discussion of how the exception to the recreational use statute was proven here.]

Therefore, this case is one that is not subject to the Tennessee Governmental Tort Liability Act but is subject to the Tennessee Claims Commission Act and the Tennessee Recreational Use Statutes. By limiting the State's immunity by removing gross negligence from the Tennessee Claims Commission Act, it would also remove any ability for recovery under the Tennessee Recreational Use Statutes. It is also important to note the State, in its brief, admitted they were guilty of ordinary negligence.

[6] The child in *Parent* also required two surgeries. *Id.* at 241.

occurring on state-owned property during recreational use.

*Parent*, 991 S.W.2d at 242. Thus, the court held that

> Tennessee Code Annotated §§ 70-7-101 et seq. is merely an affirmative defense to other viable causes of action outside the recreational use statute. The exceptions in Tenn. Code Ann. § 70-7-104 do not create new causes of action. *See* Tenn. Code Ann. § 70-7-104 ("This chapter does not limit the liability which otherwise exists for . . . ."). To adequately allege a claim, the plaintiffs are not required to plead § 104 exceptions to the State's immunity. Section 104 merely operates to: (1) negate the recreational use defense, and (2) allow a claimant to pursue a cause of action for which a recreational use defense has been raised.

*Id.* at 242–43. The court therefore concluded that the claim was not predicated on the recreational use statute, but the Claims Commission Act. *Id.* at 243 ("The plaintiffs' claim is predicated on and controlled by Tenn. Code Ann. § 9-8-307, the statute that governs the cases heard by the claims commission."). As a result, the plaintiffs were not required to affirmatively plead an exception to the recreational use statute in their complaint. *Id.* The court went on to hold that the plaintiffs met the first inquiry under the recreational use statute—that the child was engaged in a recreational activity—and remanded for the determination of whether any of the statutory exceptions could be proven. *Id.*

Although the legal issue presented in ***Parent*** is different from this case, the analysis provides considerable guidance for the case-at-bar. Importantly, the Tennessee Supreme Court in ***Parent*** makes clear that even when the recreational use statute is applicable, "[t]he State's liability . . . is still governed by and subject to the claims commission statute." ***Id.*** And the exceptions to the recreational use statute in section 70-7-104 "do not create new causes of action." ***Id.*** at 242. Thus, the exception contained in section 70-7-104(a)(1) only applies to preserve "the liability **that otherwise exists** for '[g]ross negligence, willful or wanton conduct that results in a failure to guard or warn against a dangerous condition, use, structure or activity.'" ***McCaig v. Whitmore***, No. W2015-00646-COA-R3-CV, 2016 WL 693154, at *6 (Tenn. Ct. App. Feb. 22, 2016) (emphasis added) (quoting Tenn. Code Ann. § 70-7-104). Section 9-7-307(a)(1)(C), however, only waives the State's immunity for **negligently** created or maintained dangerous conditions on State-owned property. As such, no liability for gross negligence "otherwise exists" to which the section 70-7-104 exception could attach. Unfortunately for Claimants, the "exclusive" way to impose liability against the State in this case was to show that the Child's injuries resulted from "[n]egligently created or maintained dangerous conditions on state controlled real property." Tenn. Code Ann. § 9-7-307(a)(1)(C). But "what Tennessee Code Annotated section 9-8-307(a)(1)(C) does to remove immunity from the State, the recreational use statute taketh away." ***Pierce v. State***, No. M2020-00533-COA-R3-CV, 2021 WL 2627509, at *5 (Tenn. Ct. App. June 25, 2021). The recreational use statute simply cannot preserve

- 12 -

something that never existed in the first instance.[7] While this ruling leaves some claimants, particularly, like here, those that likely cannot show the personal liability of any particular State employee, without an easy remedy, it is well within the legislature's constitutional authority to limit the exposure of our State to damages claims as it sees fit. *See* Tenn. Const. art. I, § 17. The damages awarded to Claimants must therefore be reversed.[8] The State's alternative issue is pretermitted.

## IV. CONCLUSION

The judgment of the Tennessee Claims Commission is reversed, and this matter is remanded to the Claims Commission for further proceedings as may be necessary and consistent with this Opinion. Costs of this appeal are taxed to Appellees, for which execution may issue if necessary.

S/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE

---

[7] We note that several Tennessee cases involving the recreational use statute have been filed against the State, many of which discuss the gross negligence exception. *See, e.g.*, ***Parent***, 991 S.W.2d at 2423 (holding that consideration of any of the exceptions was premature); ***Victory v. State***, No. M2020-01610-COA-R3-CV, 2021 WL 5029407, at *1 (Tenn. Ct. App. Oct. 29, 2021) (affirming the claims commissioner's finding that the evidence was insufficient to prove gross negligence); ***Pierce***, 2021 WL 2627509, at *5 (dismissing the case without ruling on whether the State committed gross negligence); ***Mathews v. State***, No. W2005-01042-COA-R3-CV, 2005 WL 3479318, at *4 (Tenn. Ct. App. Dec. 19, 2005) (holding the evidence insufficient to establish gross negligence); ***Morgan v. State***, No. M2002-02496-COA-R3-CV, 2004 WL 170352, at *6 (Tenn. Ct. App. Jan. 27, 2004) (finding no evidence upon which a reasonable person could find gross negligence). Only one unreported Tennessee case, however, has concluded that a claim of gross negligence against the State could move forward. *See **Rewcastle v. State***, No. E2002-00506-COA-R3-CV, 2002 WL 31926848, at *5 (Tenn. Ct. App. Dec. 31, 2002) ("We hold that reasonable individuals could reach different conclusions as to whether the State was guilty of gross negligence."). None of these cases, however, have ever considered the question of whether the waiver of immunity for negligence in section 9-8-307(a) includes claims for gross negligence or recklessness. "It is axiomatic that judicial decisions do not stand for propositions that were neither raised by the parties nor actually addressed by the court" ***Staats v. McKinnon***, 206 S.W.3d 532, 550 (Tenn. Ct. App. 2006). These cases therefore do not provide support for the notion that section 9-8-307(a)(1)(C) waives immunity for claims of gross negligence or recklessness.

[8] Our decision herein is not an indictment on the Claims Commission's ruling in any way. The ***Lawson*** decision was issued only months prior to the trial in this case, and the opinion was not cited to the Claims Commission in the post-trial proceedings. Still, issues of subject matter jurisdiction may not be waived, and Claimants have not asserted that the State's argument is subject to waiver in this case. *See **Dishmon v. Shelby State Cmty. Coll.***, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999) ("Parties cannot confer subject matter jurisdiction on a trial or an appellate court by appearance, plea, consent, silence, or waiver.").