IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 15, 2025 Session

## EMILY ELIZABETH BUCKNER v. COMPLETE WELLNESS CHIROPRACTIC CENTER, ET AL.

**Appeal from the Circuit Court for Bradley County**
**No. V-23-376      J. Michael Sharp, Judge**

_____

**No. E2024-00698-COA-R3-CV**

_____

This healthcare liability case comes before the court on appeal from the trial court's granting of a Rule 12.02(6) motion to dismiss for failure to state a claim upon which relief can be granted. The defendants asserted that the plaintiff failed to comply with Tennessee Code Annotated section 29-26-121, part of Tennessee's Health Care Liability Act. The trial court found that the plaintiff failed to establish that unsigned medical authorizations attached to the complaint were sufficient to satisfy the mandatory requirements of section 29-26-121 and dismissed the case. The plaintiff appealed. Upon our review, we reverse the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Reversed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., joined. THOMAS R. FRIERSON, II, J., filed a separate dissenting opinion. D. MICHAEL SWINEY, C.J., filed a separate concurring opinion.

Jimmy W. Bilbo, Cleveland, Tennessee, for the appellant, Emily Elizabeth Buckner.

John Floyd, Sr., John Floyd, Jr., J. Eric Miles, and Brigham A. Dixson, Nashville, Tennessee; James R. Embrey, Jr., Rachael McCord, and Courtney E. Smith, Franklin, Tennessee; H. Dean Clements, Brie Allaman Stewart, Joshua A. Powers, Laura Beth Rufolo, and Philip Aaron Wells, Chattanooga, Tennessee; Nora A. Koffman, Johnson City, Tennessee; and Hanson R. Tipton and Dan R. Pilkington, Knoxville, Tennessee, for the appellees, Complete Wellness Chiropractic Center; Eric William Gruber, D.C.; Gary Joseph Voytik, D.O.; Cleveland Tennessee Hospital, LLC; Kerrie Knox, R.N.; American Physician Partners, LLC; Raymond A. Azbell, M.D.; Steven Perlaky, M.D.; Jennifer Dawn Walker, P.A.; Summit Medical Group, PLLC; Dennis A. Thompson, D.O.; Plaza

Radiology; James A. Martin, M.D.; and Voytik Center for Orthopedic Care, P.C.

## OPINION

## I. BACKGROUND

Plaintiff Emily Elizabeth Buckner ("Patient") was injured in a fall down some stairs in June 2020. She went to defendant Complete Wellness Chiropractic Center ("CWCC") with back and buttocks pain shortly after the fall. After an adjustment, she did not experience any symptoms that required additional treatment until November 1, 2021. At that time, she returned to CWCC with increased back pain measuring 6 on a 10-point scale and received another adjustment.

Later that month, on November 24, 2021, Patient saw defendant Gary Joseph Voytik, D.O., at defendant Voytik Center for Orthopedic Care, P.C. ("VCOC") with back pain measuring 8 on a 10-point scale. X-rays did not reveal any bony abnormalities and these defendants opined to wait until after Patient underwent a January 4, 2022 hysterectomy before considering a MRI of the lumbar spine. Patient was given a steroid injection and instructed to return in four weeks. On December 21, 2021, Patient returned to defendants Dr. Voytik and VCOC, asserting that the injection administered four weeks earlier had not been beneficial. Patient's pain was measured as a 7. These defendants again chose to wait until after the scheduled January 4, 2022 hysterectomy to consider requesting a MRI.

On February 2, 2022, Patient saw defendants Dennis A. Thompson, D.O. and Summit Medical Group, PLLC ("Summit") for her back pain. These defendants diagnosed Patient with coccydynia[1] and pelvic somatic dysfunction and performed an adjustment. However, because the back pain increased to 10, Patient returned on February 14, 2022, to defendants Eric William Gruber, D.C., and CWCC; an adjustment was administered. The next day, Patient was unable to walk without assistance because of the severity of the pain. Patient contacted defendants Dr. Voytik and VCOC to request that the MRI be moved up. That same day, Patient went to defendants James A. Martin, M.D. and Plaza Radiology, LLC, d/b/a Cleveland Imaging ("Plaza"). Because the pain was so severe, the study could not be performed. She was sent to the emergency department of defendant Cleveland Tennessee Hospital Company, LLC, d/b/a/ Tennova Healthcare—Cleveland ("Tennova").

At Tennova, Patient was seen by defendants Steven Charles Perlaky, M.D.; American Physician Partners, LLC; Raymond A. Azbell, M.D.; Jennifer Dawn Walker, P.A.; and Kerrie Knox, R.N. Patient's pulse rate was 123 bpm and her symptoms also included right leg numbness along with pain measuring at 10. She did not have loss of

---

[1] Coccydynia is the medical term for tailbone pain. Tailbone pain: How can I relieve it?, https://www.mayoclinic.org/diseases-conditions/back-pain/expert-answers/tailbone-pain/faq-20058211

bowel and/or bladder control. Patient reported that February 15, 2022, was the first day the pain had become unbearable. After pain medication was administered, Patient was discharged back to defendants Dr. Martin and Plaza for the MRI. She was instructed to follow-up with her primary care physician in one to two days.

Defendants Dr. Martin and Plaza performed a MRI of the pelvis/sacrum without contrast, reportedly requested by defendant Dr. Voytik for sprain of ligaments of lumbar spine. Defendant Dr. Martin listed impressions including a 1.2 cm central disc protrusion/extrusion at L5-S1.

On February 17, 2022, Patient returned to defendants Dr. Voytik and VCOC with debilitating pain; she reported that her right leg and buttock were numb. A steroid injection was administered and defendant Dr. Voytik stated that he would send Patient to a specialist. However, during the night on February 17 or in the morning of February 18, 2022, Patient lost control of her bladder. She was transported to the Erlanger East emergency department. Another MRI was obtained that identified a large L5-S1 disc herniation causing severe spinal stenosis with likely impingement of traversing nerve roots. By that time. Patient also had a new onset of numbness in her vaginal area. Emergency surgery was performed on February 18, 2022.

According to Patient, as a direct and proximate result of the defendants' negligent failure to timely diagnose and treat her condition, she suffered a preventable, catastrophic injury known as cauda equina syndrome.[2] She asserts that the defendants' failures to timely and properly diagnose her medical condition and the negligent delays in providing all necessary and immediate treatment caused her to suffer permanent grievous medical consequences, along with horrible physical and mental pain and suffering, which would not have occurred absent the defendants' negligence.

Patient initiated this healthcare liability action on June 9, 2023. In her complaint, Patient alleged that each of the fourteen defendants—CWCC; Dr. Gruber; Tennova; Dr. Perlaky; American Physician Partners, LLC; Dr. Azbell; Ms. Walker; Ms. Knox; Dr. Martin; Plaza; Dr. Voytik; VCOC; Dr. Thompson; and Summit (collectively "Practitioners")—acted negligently in the provision of their care and treatment of Patient, which resulted in injury.

Patient's complaint alleges that she sent pre-suit notice, as required by Tennessee Code Annotated section 29-26-121 ("Section 121"), on February 14 and 15, 2023. Patient filed with her complaint twenty separate affidavits claiming that pre-suit notice was sent

---

[2] Cauda equina syndrome is a medical emergency that happens when an injury or herniated disk compresses nerve roots at the bottom of your spinal cord. The cauda equina nerves communicate with your legs and bladder. It causes back pain, weakness, and incontinence. The condition can permanently damage your body, affecting your health and quality of life. Cauda Equina Syndrome: What It Is, Symptoms & Treatment, https://my.clevelandclinic.org/health/diseases/22132-cauda-equina-syndrome

via Certified Mail to the various addresses of each Practitioner, which included the notice letter, the list of providers who were sent notice, the medical authorizations, and the United States Postal Service ("USPS") Certificate of Mailing. Specifically, the affidavits state that "Exhibit 3" of each affidavit contained a copy of "the HIPAA-compliant medical authorization permitting this notice provider to obtain complete medical records from all providers who were sent notice." However, each "Exhibit 3" to the affidavits only included **unsigned** medical authorizations.[3]

Based on the unsigned medical authorizations, Practitioners began filing motions to dismiss pursuant to Rule 12.02(6) of the Tennessee Rules of Civil Procedure for failure to establish compliance with Section 121. They asserted in the motions that Patient did not meet her burden of demonstrating compliance with Section 121 because the only documentation submitted to show compliance were affidavits that incorporated invalid and noncompliant HIPAA medical authorizations, which were unsigned and missing a required statement pertaining to the "ability or inability to condition treatment, payment, enrollment or eligibility for benefits on the authorization." It was argued that these deficiencies were enough to warrant a dismissal.

Patient did not respond by filing signed copies of the medical authorizations; rather she insisted that she complied with the statute despite the lack of proof in the record. In the alternative, Patient claimed that she substantially complied with the requirements. Practitioners note that the record remains devoid of any proof that Patient ever mailed signed, HIPAA-compliant medical authorizations with her pre-suit notice in this matter.

On September 14, 2023, before ruling on the dismissal request, the trial court asked the parties to submit additional briefing on Section 121 and the case law pertaining to demonstrating compliance with the pre-suit notice requirement. On October 16, 2023, in their Joint Supplemental Brief, Practitioners asserted that no case law exists overruling a Tennessee trial court for dismissing an action due to a plaintiff's failure to prove compliance with Section 121(a)(4) specifically. Practitioners noted that although there is case law reversing trial courts for dismissing cases for procedural errors with Section 121, the defect in this case is a substantive error because Patient was completely unable to prove that she complied with Section 121 and her averred proof of compliance demonstrates that she, in fact, did not comply. Accordingly, Practitioners contended that the motion to dismiss should be granted.

Patient responded that affidavits of compliance with Section 121 were filed with the complaint, "including copies of the H[I]PAA compliant medical authorizations." Patient asserted that if the trial court wanted additional evidence of compliance as authorized by Section 121(b), it could ask Practitioners to state that they received the signed authorizations. Lastly, Patient argued that Practitioners had not alleged that they were

---

[3] HIPAA is an acronym for the Health Insurance Portability and Accounting Act of 1996.

- 4 -

prejudiced by any error; as case law allows substantial compliance with Section 121 in some circumstances, Patient contended that the motion to dismiss should fail. Patient did not offer any proof into the record to demonstrate that signed, HIPAA-compliant medical authorizations accompanied the pre-suit notice that she claimed established her compliance with Section 121.

A final hearing on the motion to dismiss was held on March 28, 2024, and the following argument ensued:

> MR. DIXSON: In this case, respectfully, the record demonstrates . . . that he did not comply with the 29-26-121 by providing that HIPAA-compliant authorization.
>
> It's the Plaintiff's sole burden to comply with Section 121. To find that the Plaintiff has complied in this case, I'd submit that the Court has to find either that, A., the Plaintiff did not have to attach a copy of the notice that was sent – if you're going to accept what I would submit also is not evidence; it's attorney statements that something else was sent – so you'd have to say you didn't have to attach a copy of the notice, which is directly contradicted by the statute; or you'd have to find that an unsigned medical authorization is sufficient. Neither of those are permitted by any applicable law.
>
> So, finally, we received a supplemental brief from Mr. Bilbo and Plaintiff, and it appears that their arguments are limited to statements that the Defendants are not alleging that they didn't receive a signed HIPAA authorization.
>
> In that respect, Defendants aren't alleging anything. The Defendants are looking at the record before the Court and determining whether a Rule 12 motion is appropriate; and that's the limit – that's the scope of the Court's review, what does the record show.
>
> THE COURT: Uh-huh
>
> MR. DIXSON: And we would routinely say, in closing arguments, what attorneys say is not evidence. What's evidence is what's the record. The record here demonstrates only an unsigned authorization.
>
> The Plaintiff notes that he has provided affidavits of compliance, but each of those affidavits reference the unsigned HIPAA authorization; and they've only been submitted with the complaint.
>
> Ultimately, I think this is an attempt at burden-shifting to the Defendants to

-- to carry the burden to show how he didn't comply with 121. He has the burden to show that he's met all the statutory requirements; and, respectfully, he's not done so.

. . .

THE COURT: Counsel, just -- just one question, and I'll let you make whatever points you want to make. Did your client get a signed copy, regardless of what was attached to the complaint?

MR. DIXSON: I can't speak to everyone.

THE COURT: I'm talking about your clients.

MR. DIXSON: I believe they did receive a copy.

THE COURT: Okay

MR. DIXSON: Let me say, we routinely – maybe not routinely -- not infrequently receive multiple presuit-notice letters.

THE COURT: Uh-huh.

MR. DIXSON: The burden remains on Plaintiff. And what you just asked me -- I understand the reason, but that's not the record. There's reasons and there's specific ways that the statute has to be complied with –

THE COURT: Uh-huh.

MR. DIXSON: -- and he's admitted that it hasn't been complied with by saying he didn't include a signed HIPAA authorization with the notice letter that accompanies the affidavit.

THE COURT: Uh-huh.

MR. DIXSON: So that's the evidence – that's the record. . . .

The trial court entered its order granting the dismissal of this action on April 15, 2024. The court, in agreeing with Practitioners' arguments, noted that the word "shall" in Section 121 meant the accompanying requirement was intended to be mandatory. Accordingly, the court found that Patient did not meet the substantive requirements of Section 121 because the authorizations that were filed as mandated by Section 121(a)(4) were unsigned and noncompliant with HIPAA. Because there was no evidence of

- 6 -

compliance, the court found that the pre-suit notice in this case was not effectuated and granted the respective motions to dismiss on that basis.

Patient filed a timely notice of appeal.

## II. ISSUE

We restate Patient's issue on appeal as follows:

Whether the trial court correctly dismissed Patient's healthcare liability action when there is no proof in the record that Patient provided HIPAA-compliant authorizations along with her pre-suit notice, as required by Section 121.

## III. STANDARD OF REVIEW

When reviewing a trial court's order regarding a motion to dismiss, the issue is a question of law which appellate courts review *de novo* with no presumption of correctness. *Cothran v. Durham Sch. Servs., L.P.*, 666 S.W.3d 369, 375 (Tenn. Ct. App. 2022). As such, the appellate court looks at the complaint anew and only considers its legal sufficiency. The Tennessee Supreme Court in *Martin v. Rolling Hills Hosp., LLC*, 600 S.W.3d 322 (Tenn. 2020) confirmed that a Rule 12.02(6) motion to dismiss is the "proper vehicle for challenging a plaintiff's compliance with the pre-suit notice requirements of Section 121." *Id.* at 334-35.

"The question of whether [a plaintiff] has demonstrated extraordinary cause that would excuse compliance with the statutes is a mixed question of law and fact, and our review of that determination is *de novo* with a presumption of correctness applying only to the trial court's findings of fact and not to the legal effect of those findings." *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307-08 (Tenn. 2012) (citing *Starr v. Hill*, 353 S.W.3d 478, 481-82 (Tenn. 2011)). According to the *Myers* Court, we must review a "trial court's decision to excuse compliance under an abuse of discretion standard." *Id.* at 308. "A trial court abuses its discretion only when it 'applie[s] an incorrect legal standard or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). If a discretionary decision is within a range of acceptable alternatives, we will not substitute our judgment for that of the trial court simply because we may have chosen a different alternative. *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999).

This appeal also involves the interpretation of statutes. Statutory construction is a question of law that is reviewed *de novo* with no presumption of correctness. *Thurmond v. Mid-Cumberland Infectious Disease Consultants, PLC*, 433 S.W.3d 512, 516-17 (Tenn.

2014). The Tennessee Supreme Court has provided:

> When interpreting a statute, our role is to ascertain and effectuate the legislature's intent. We must not broaden or restrict a statute's intended meaning. We also presume that the legislature intended to give each word of the statute its full effect. When statutory language is unambiguous, we accord the language its plain meaning and ordinary usage. Where the statutory language is ambiguous, however, we consider the overall statutory scheme, the legislative history, and other sources.

*Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs., Inc.*, 418 S.W.3d 547, 553 (Tenn. 2013).

## IV. DISCUSSION

As relevant to this appeal, Section 121 requires:

> (a)(1) Any person … asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability in any court of this state.

Section 121 enables noticed healthcare providers to "investigate the merits of the claim and pursue settlement negotiations before the start of the litigation." *Runions v. Jackson Madison Cnty. Gen. Hosp. Dist.*, 549 S.W.3d 77, 86 (Tenn. 2018) (citing *Foster v. Chiles*, 467 S.W.3d 911, 915 (Tenn. 2015)). This "benefits the parties by promoting early resolution of claims, which also serves the interest of judicial economy." *Id.*

> The written, pre-suit notice "shall include":
>
> (A) The full name and date of birth of the patient whose treatment is at issue;
>
> (B) The name and address of the claimant authorizing the notice and the relationship to the patient, if the notice is not sent by the patient;
>
> (C) The name and address of the attorney sending the notice, if applicable;
>
> (D) A list of the name and address of all providers being sent a notice; and
>
> (E) A HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice.

Tenn. Code Ann. § 29-26-121(a)(2)(A)-(E). The information required by Subsections 121(a)(2)(A)-(C) "facilitate[s] early resolution of healthcare liability claims." *Stevens*, 418 S.W.3d 547, 554 (Tenn. 2013). Subsections (D) and (E) enable potential defendants to evaluate the merits of a potential plaintiff's claim and to gauge the comparative fault of other potential defendants. *Id.* Unlike the pre-suit notice requirement of Section 121(a)(1), the content requirements of Section 121(a)(2) "are not mandatory, but directory, and can be achieved through substantial compliance." *Arden v. Kozawa*, 466 S.W.3d 758, 763 (Tenn. 2015) (citing *Thurmond*, 433 S.W.3d at 520; *Stevens*, 418 S.W.3d at 555).

In *Stevens*, our Supreme Court discussed the requirement for a HIPAA compliant medical authorization as follows:

> Tenn. Code Ann. § 29-26-121(a)(2)(E) provides that a plaintiff "shall" include in the pre-suit notice a "HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each provider being sent a notice."

> Section 121(b) requires that:

> If a complaint is filed in any court alleging a claim for health care liability, the *pleadings shall state* whether each party has complied with subsection (a) and *shall provide the documentation* specified in subdivision (a)(2). The court may require additional evidence of compliance to determine if the provisions of this section have been met. The court has discretion to excuse compliance with this section only for extraordinary cause shown.

Tenn. Code Ann. § 29-26-121(b) (emphasis added).

As noted, the plaintiff has the initial burden of filing documents with the complaint in order to demonstrate compliance with Section 121. Specifically, a plaintiff must file copies of the pre-suit notices that were sent, including copies of the HIPAA-compliant authorizations that accompanied the pre-suit notice. In the instant case, Patient attached to her complaint twenty affidavits executed by her counsel which exhibited copies of the pre-suit letters and authorizations that Patient contends establishes her compliance with Section 121. However, each of the medical authorizations included with the pre-suit notice and attached to the complaint was unsigned.

Practitioners assert that the record reflects the medical authorizations Patient relies upon to attempt to demonstrate compliance with Section 121 were unsigned in violation of 45 C.F.R. § 164.508(c)(1)(vi). They contend that Tennessee law is clear Patient cannot be found to have substantially complied with Section 121 when relying on a medical authorization that fails to contain one of HIPAA's core elements.

In order for the medical authorization mandated by Section 121 to be HIPAA-compliant, it "must contain" each of the "core elements" listed in 45 C.F.R. § 164.508(c)(1). These core elements include:

(i) A description of the information to be used or disclosed that identifies the information in a specific and meaningful fashion.

(ii) The name or other specific identification of the person(s), or class of persons, authorized to make the requested use or disclosure.

(iii) The name or other specific identification of the person(s), or class of persons, to whom the covered entity may make the requested use or disclosure.

(iv) A description of each purpose of the requested use or disclosure....

(v) An expiration date or an expiration event that relates to the individual or the purpose of the use or disclosure....

(vi) Signature of the individual and date. If the authorization is signed by a personal representative of the individual, a description of such representative's authority to act for the individual must also be provided.

*Stevens*, 418 S.W.3d at 555-56 (quoting 45 C.F.R. § 164.508(c)(1)). "A medical authorization lacking a core element is not valid. When a pre-suit medical authorization is facially invalid, the recipient is per se prejudiced and bears no burden to use or correct the form." *Hancock v. BJR Enterprises, LLC*, No. E2019-01158-COA-R3-CV, 2020 WL 2498390, at *7 (Tenn. Ct. App May 14, 2020).

According to Practitioners, there remains no proof whatsoever in the record of signed HIPAA-compliant authorizations having been provided with Patient's pre-suit notice, as required by Section 121. Because the record is devoid of any proof that Patient mailed HIPAA-compliant medical authorizations along with her pre-suit notice, Practitioners assert that she cannot demonstrate any compliance with Section 121 and dismissal of the complaint was proper.

In addition to the content requirements of the notices, the statute twice specifies that compliance with the notice requirement shall be demonstrated by filing the notices with the complaint. First, when, as here, a Patient attempts to accomplish pre-suit notice via mail, Section 121(a)(4) states that compliance with the requirements of the statute shall be demonstrated by filing (1) a certificate of mailing; (2) an affidavit of the mailing party stating that the notice was timely mailed; and (3) a copy of the notices sent. In addition, Section 121(b) provides that "[i]f a complaint is filed in any court alleging a claim for

- 10 -

health care liability, the pleadings shall state whether each party has complied with subsection (a) and shall provide the documentation specified in subdivision (a)(2)." In *Shockley v. Mental Health Cooperative, Inc.*, 429 S.W.3d 582 (Tenn. Ct. App. 2013), we observed:

> [I]n order to maintain a health care liability action, the plaintiff must provide proof that it has complied with the foregoing statutory requirements. This proof is accomplished by attaching, as exhibits to the complaint, an affidavit of mailing supported by actual proof that the notice was mailed. Tenn. Code Ann. [§] 29-26-121(a)(4). In addition to the proof of mailing, under Section 29–26-121(b), the plaintiff must also state, in the complaint, that it has complied with the pre-suit notice requirement and, furthermore, must attach to the complaint copies of the actual notice(s) showing compliance with the enumerated requirements (set out at Section 29-26-121(a)(2)).

*Id.*, 429 S.W.3d at 587.

Patient claims she attempted to comply with Section 121 by sending the pre-suit notice and accompanying medical authorizations by certified mail, as provided for in Section 121(a)(3)(B). Accordingly, Patient was required to demonstrate compliance with that section by following the procedure set forth in Section 121(a)(4). However, the authorizations Patient attached to the affidavits accompanying her complaint were unsigned, not compliant with HIPAA, and insufficient to establish compliance with Section 121. The unsigned forms failed to satisfy the sixth compliance requirement mandated by HIPAA. *See* 45 C.F.R. §164.508(c)(1)(vi).

In *Travis v. Cookeville Reg'l Med. Ctr.*, No. M2015-01989-COA-R3-CV, 2016 WL 5266554 (Tenn. Ct. App. Sept. 21, 2016), one issue before this court was that the plaintiff provided unsigned medical authorizations. The *Travis* plaintiff argued that he initially sent the signed copies of the medical authorization attached to pre-suit notice letters, but he did not retain a copy of those signed authorizations for his records. He asserted that the unsigned authorizations should constitute substantial compliance. We reasoned as follows in our decision:

> It is undisputed that the unsigned HIPAA form … failed to satisfy the sixth compliance requirement mandated by HIPAA. *See* 45 C.F.R. § 164.508(c)(1)(vi). In *Stevens*, our Supreme Court held that, "[n]on-substantive errors and omissions" will not "derail a healthcare liability claim" so long as the medical authorization provided is "sufficient to enable defendants to obtain and review a plaintiff's relevant medical records." *Stevens*, 418 S.W.3d at 555. The unsigned HIPAA form … would not "permit[ ] the provider receiving the notice to obtain complete medical

records from each other provider being sent a notice." Tenn. Code Ann. § 29-26-121(a)(2)(E). However, Mr. Travis contends that the HIPAA form he initially sent to the defendants along with the pre-suit notice was signed. In a sworn affidavit, Mr. Travis's counsel stated that he "included a HIP[A]A Compliant Authorization form for the Release of Patient Information" with the pre-suit notice letters he sent to each defendant. . . . [H]e reiterated that the HIPAA forms he sent were signed by Mr. Travis, but he failed to retain a copy of the signed forms for his records and was thus unable to produce the signed forms.[4] [Defendants] argue in their brief that "[p]resuit notice provided … by the plaintiff in this case was defective because the medical authorization forms allegedly supplied to them were not signed by Mr. Travis, and were thus not HIPAA compliant." CRMC asserts that Mr. Travis "remains in non-compliance with [Tenn. Code Ann. § 29-26-121(b)] because he has not filed a HIPAA compliant form ...." **We have no proof before us, other than Mr. Travis's counsel's late-filed affidavit and argument that the HIPAA form sent to each defendant was signed.**

Mr. Travis's counsel's failure to practice good record keeping has placed us in a predicament that Tenn. Code Ann. § 29-26-121(b) was put in place to avoid.

*Travis*, 2016 WL 5266554, at *7 (emphasis added). The *Travis* Court concluded, relying on the mandatory language in Section 121(b), that the plaintiff had failed to provide documentation demonstrating that he complied with Section 121(a)(2)(E).

As in *Travis*, Patient here maintains that she provided signed authorizations with the pre-suit notice; different than the case in *Travis*, however, is the fact that counsel for Dr. Martin acknowledged the receipt of a signed copy of the medical authorization. Because Dr. Martin's counsel admitted at the hearing that the physician received a signed medical authorization, he acknowledged that Dr. Martin was not prejudiced by Patient's failure to attach the signed medical authorization to the complaint. We consider Dr. Martin's counsel's admission to the trial court's direct question at the hearing to be a "prejudicial concession," *see Joyce v. Joyce*, No. 02A01-CH-00034, 1996 WL 740813, at *3 (Tenn. Ct. App. Dec. 30, 1996), rather than merely a statement of counsel that would not constitute

---

[4] In a footnote, counsel for Mr. Travis stated that:

[The HIPAA releases] that went out were signed. If you would like additional proof to that, I don't believe that CRMC has made any motion that they did not receive notice and has actually admitted receiving notice. And if they would–could present their copy of the HIPAA–compliant release form, that would serve to show Your Honor that the release form is in fact signed, as are all of them that were sent out.

*Travis*, 2016 WL 5266554, at *7.

evidence, *see Elliott v. Cobb*, 320 S.W.3d 246, 250 (Tenn. 2010). Given this admission by counsel for Dr. Martin, we reverse the trial court's dismissal and remand this action to the trial court to hold an evidentiary hearing to consider whether other Practitioners received the signed medical authorizations with the pre-suit notice. If other Practitioners received proper authorizations, "[t]he purpose of the statute and the essence of the thing to be accomplished—pre-suit notice to the defendants—has been satisfied here." *See Myers*, 382 S.W.3d at 309. When there is no prejudice and the interests of justice are promoted, "failure to conform to technical requirements is not fatal." *Stevens*, 418 S.W.3d at 554. "[I]t is well settled that Tennessee law strongly favors the resolution of all disputes on their merits." *Henley v. Cobb*, 916 S.W.2d 915, 916 (Tenn. 1996). We should strive to resolve healthcare liability disputes as we do all other legal disputes—on their merits; acting on procedural technicalities is contrary to the purposes and intent of the statutory provisions. *Id*.

## V. CONCLUSION

The judgment of the trial court is reversed and the case is remanded for further proceedings consistent with this opinion. Costs of the appeal are assessed against the appellees: Complete Wellness Chiropractic Center; Eric William Gruber, DC; Gary Joseph Voytik, D.O.; Cleveland Tennessee Hospital, LLC; Kerrie Knox, R.N.; American Physician Partners, LLC; Raymond A. Azbell, M.D.; Steven Perlaky, M.D.; Jennifer Dawn Walker, P.A.; Summit Medical Group, PLLC; Dennis A. Thompson, D.O.; Plaza Radiology; James A. Martin, M.D.; and Voytik Center for Orthopedic Care, P.C.

_____
JOHN W. MCCLARTY, JUDGE